NATHAN ILSLEY *vs.* CHARLES F. JONES & another.

In an action on a guaranty of a sale of goods, the plaintiff must allege and prove that the purchaser has been requested and refused or failed to pay.

An offer to accept a draft may be withdrawn by a letter received by the drawer before the draft has been actually presented for acceptance by him or his agent.

The measure of damages for nonperformance of an agreement to accept a draft for the drawer's accommodation, which is still in his hands, is the inconvenience and loss there by occasioned to him, and not the amount of the draft.

ACTION OF CONTRACT, ·brought in the superior court of Suffolk on the 22d of December 1856. One count in the declaration alleged that the defendants sold a quantity of hay and straw belonging to the plaintiff, of the value of $640.36; that the expenses and charges, including a guaranty commission for the same, were $67.21; that, in consideration of said guaranty commission, the defendants agreed to guaranty and did guar·

anty said sales of hay and straw to the plaintiff, and thereby became liable to pay and owed the plaintiff the sum of $573.15. The defendants demurred to this count, because it proceeded upon a contract of guaranty, yet did not allege that the plaintiff had endeavored and been unable to collect the amount due on the sales of hay and straw from the purchaser, and had applied to him for the collection of that amount. *Huntington,* J. overruled the demurrer.

Another count alleged that the defendants sold certain hay and straw belonging to the plaintiff, and represented to the plaintiff that they had in their hands, after deducting all expenses and charges, the sum of $573.15, and authorized the plaintiff to draw on them for that amount, and agreed to accept and pay the draft; and that the plaintiff thereupon drew such a draft, at thirty days, payable to the order of Samuel L. Jackson, which was duly presented to the defendants for acceptance, and they then refused to accept it. The defendants admitted that they made an offer to accept the plaintiff's draft for the amount stated; but alleged that it was merely for the plaintiff's accommodation, and was withdrawn before it was accepted.

At the trial in the superior court there was evidence of the following facts: The defendants, who were dealers in coal and lumber and commission merchants in Boston, took a quantity of hay and straw belonging to the plaintiff, who resided in Portland, on storage, and agreed to sell it, if they had an opportunity, and receive a commission therefor; sold it to one Bayley, and on the 16th of October 1856 sent him an account, in which they charged a commission of five per cent. and showed a balance in his favor of $573.15, and a letter saying: " We have not yet collected the amount. Such sales, although made for cash, are usually allowed to remain a month or so, and we are promised the money in a few days. When we receive it, we will do with the same as you may direct us. If it will accommodate you, you may draw on us at one month's sight for the above amount, and we will accept the same."

The plaintiff returned an answer, dated October 22d, expressing dissatisfaction with the charge of the commission; and sent

to Jackson, his agent in Boston, a draft on the defendants for a larger sum, allowing a commission of two and a half per cent. only. This draft was presented to the defendants for acceptance by Jackson, and they refused to accept it, but told Jackson that if the plaintiff would draw on them for the proper amount, allowing five per cent. commission, they would accept it.

Jackson testified that a day or two afterwards he read to the defendant Jones an extract from a letter from the plaintiff to him, dated October 27th, complaining that the defendants had charged five per cent. commission without a guaranty; that thereupon Jones said that the charge included a guaranty commission, and offered to guaranty if the plaintiff would allow the five per cent. commission, and Jones agreed to accept the plaintiff's draft, if drawn upon the defendants for the amount stated in the account rendered.

Jones testified that there never was any such conversation about a guaranty or a guaranty commission; that he never agreed to guaranty, and that the five per cent. commission was for the sale alone, which was attended with extra trouble.

There was no evidence that the defendants ever represented that they had collected the money due on the sales, or that they did in fact collect it, except the sum of $52.84, which was less than they claimed for charges, commissions and expenses. It appeared that they told Bayley that the hay belonged to the plaintiff and was sold on his account, and soon afterwards told the plaintiff's son in Boston to whom they had sold it; and that on the 25th of October Bayley became insolvent and stopped payment.

There was evidence that on the 29th of October the defendants wrote to the plaintiff, saying: " We have made out another account according to your wishes, although the trouble we have had in this business is well worth a good deal more. When the amount is collected, we will pay the same to your order, but until then we must decline doing anything else in the matter;" that the plaintiff received this letter, and on the 30th of October wrote to Jackson, enclosing the draft declared on in the second count, which was presented by Jackson to them for acceptance,

and acceptance refused; and that Jackson received this draft only as the plaintiff's agent to get it accepted.

The question of the times of mailing and receiving the various letters was left to the jury on conflicting evidence. The defendants' counsel argued that the defendants' letter of October 29th reached the plaintiff before Jackson had presented the second draft; and requested the judge to instruct the jury that if the defendants' letter reached the plaintiff before this draft was presented, and Jackson acted merely as the plaintiff's agent to get the acceptance, if there was a previous contract to accept a guaranty, that contract was withdrawn by that letter. But the judge refused so to instruct; and did instruct the jury that if the negotiations were conducted by correspondence between the plaintiff and defendants, and the defendants offered to treat the sale as a guaranty and to pay or accept a draft for the amount of sales, based on the amount of sales and allowance of five per cent. commission, they had a right to retract the offer at any time before it had been accepted by the plaintiff; but if the plaintiff accepted the offer, and relinquished the two and a half per cent. to the defendants, and wrote to them to that effect, t would be too late for them to withdraw their prior offer when the draft drawn pursuant to that such offer was presented to hem personally.

The defendants argued to the jury that their offers to accept the plaintiff's draft were offers to accept for his accommodation merely; and contended that the measure of damages for non-acceptance of the defendants was the inconvenience and loss which the plaintiff had sustained from relying on their offer to accept and their failure to do so. But the judge instructed the jury that the measure of damages was the amount of the draft. The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*D. E. Ware*, for the defendants.

*J. G. King*, for the plaintiff.

BY THE COURT. 1. The just construction to be given to the count to which the defendants have demurred is not free from difficulty. But whether viewed as alleging a contract of guaranty

made subsequently to the sale, or the ordinary contract of guaranty in pursuance of the understanding and agreement upon which the goods were entrusted to the defendants for sale, the demurrer should have been sustained; for, in either view, the contract declared on is a contract of guaranty only, and contingent upon the default of the vendee. In an action upon such a contract, it is necessary to allege and to prove an application to the vendee to perform the contract, and a refusal or failure on his part to comply. The rule is clearly stated by Lord Ellenborough in *Morris* v. *Cleasby*, 4 M. & S. 574: " The guarantor is to answer for the solvency of the vendee, and to pay the money, if the vendee does not. On the failure of the vendee, he is to stand in his place, and to make his default good. Where the form of action makes it necessary to declare upon the guaranty, application to the principal must be stated on the record. In all cases it must, if required, be proved, though in the case of a foreigner very slight evidence may be sufficient." See also *Thompson* v. *Perkins*, 3 Mason, 232; *Bickford* v. *Gibbs*, 8 Cush. 154.

2. The instructions requested by the defendants' counsel, in relation to the withdrawal of the offer or agreement to accept the plaintiff's draft, should have been given to the jury. If the letter of the defendants of October 29th 1856 reached the plaintiff before the second draft was presented by Jackson to the defendants for their acceptance, Jackson having no interest in the draft, and acting only as the agent or messenger of the plaintiff to get the acceptance of the defendants, the withdrawal of the offer was made before the plaintiff had signified his assent to the proposition made by the defendants to accept. The mere writing of the draft, so long as it remained in the plaintiff's possession or under his control, did not make such assent. If, when the draft was presented by his agent, he knew the offer to accept it had been withdrawn, the defendants clearly were not bound to accept.

The difficulty with the instructions actually given by the pre siding judge is not that, as applied to the state of facts suggested by him, they do not state the law correctly, but that they

do not meet the calls of the evidence. They proceed upon the ground that the negotiations of the parties were conducted on both sides by written correspondence. The report does not so show. Though the defendants wrote directly to the plaintiff at Portland, the negotiations on the part of the plaintiff were principally through their agent, Jackson, at Boston. The proposition to accept the draft of the plaintiff, if he allowed the five per cent. commission, was made orally to Jackson. The defendants contended that before any draft was presented in pursuance of this offer, the offer was withdrawn by letter received before the draft was presented or the assent of the plaintiff to their proposition otherwise given. And they clearly had the right to have the jury instructed what would be the result if they found such to be the fact.

3. If the agreement of the defendants was to accept merely for the accommodation of the plaintiff, the rule as to damages given by the judge was erroneous. The rule should have been given substantially as requested by the defendants. Upon the facts reported, however, it is difficult to understand how such a question could arise; to see what evidence there is that the draft was to be accepted for the accommodation only of the plaintiff. *Exceptions sustained.*