## Case No. 13,972.

### THOMPSON v. PERKINS et al.

[3 Mason, 232.] [1]

Circuit Court, D. Massachusetts.  Oct. Term, 1823.

PRINCIPAL AND AGENT — DEL CREDERE AGENT — NOTES TAKEN—TRACING PROPERTY.

1. If a factor del credere sells the goods of his principal, and takes negotiable securities in payme.., and fails before they become due, and assigns those securities to his assignees, in favor of his creditors, and the assignees afterwards receive the money when the notes become due, the principal may recover the money from the assignees, subject to a deduction of the lien of the factor for his commissions and charges.

[Cited in Calais Steamboat Co. v. Scudder, 2 Black (67 U. S.) 385; Nutter v. Wheeler, Case No. 10,384.]

[Cited in Lewis v. Brehme, 33 Md. 421; Lee v. Hennick (Ohio Sup.) 39 N. E. 474; Ilsley v. Jones, 12 Gray, 264. Cited in brief in Dickinson v. Gray, 7 Allen, 31; Baker v. New York Nat. Exch. Bank, 100 N. Y. 34, 2 N. E. 452 ]

2. Wherever the principal can trace his property, as distinct from that of the factor, he can recover it, into whosesoever hands it may come.

[Applied in Yates v. Curtis, Case No. 18,127. Cited in Piatt v. Oliver, Id. 11,115; Whelpley v. Erie Ry. Co., Id. 17,504; Terry v. Bamberger, Id. 13,837; Commercial Nat. Bank v. Armstrong, 39 Fed. 692.]

[Cited in Boston & M. R. Co. v. Warrior Mower Co., 76 Me. 261; Merrill v. Bank of Norfolk, 19 Pick. 34; Baker v. New York Nat. Exch. Bank, 100 N. Y. 34, 2 N. E. 452; Roca v. Byrne (N. Y. App.) 39 N. E. 813; Overseers of Poor v. Bank of Virginia, 2 Grat. 548; Vance v. Kirk, 29 W. Va. 354, 1 S. E. 717.]

Assumpsit on the money counts. Plea, the general issue.

The case at the trial was this. The plaintiff [Edward Thompson], a merchant of Philadelphia, consigned goods to Messrs. Winslow, Channing & Co. who were auctioneers in Boston, for sale. Messrs. Winslow, Channing & Co. accordingly sold the same, and took negotiable promissory notes, payable on time, in their own names, for the amount of the sales. Afterwards, and before the notes became due, they failed and assigned their property to the defendants [Thomas H. Perkins and others], as assignees, for the benefit of their creditors, and among other assigned property were the notes taken for the goods of the plaintiff. The assignees received payment of the notes; and the present action was brought to recover the amount of the money so received on these notes, deducting the commissions and charges of the auctioneers, who acted under a del credere commission. At the trial a verdict was taken for the plaintiff, subject to the opinion of the court.

Mr. Hubbard, for plaintiff, argued that the plaintiff was entitled to recover. The general principle is, that the owner is entitled to recover, whenever he can trace his own property, or its proceeds, as distinguish-

ed from the factor's. It makes no difference, that the notes are taken in the factor's name. So is Scott v. Surman, Willes, 400. The same doctrine is stated in a stronger case, Price v. Ralston, 2 Dall. [2 U. S.] 60. And the same doctrine is recognized in Goodenow v. Tyler, 7 Mass. 36. The sale does not vest any property in the factor. The money is still that of the principal. George v. Clagett, 7 Term R. 359. Neither does the payment of a del credere commission change the operation of the principle. A guaranty is not a purchase of the goods by the factor. It is merely a collateral undertaking to pay in case of the insolvency of the vendee. If it were otherwise, the principal would lose the security of the vendee, and possess only that of the factor. If the vendee were not also liable to the principal in such case, then it would not be a case of guaranty, but of direct original purchase by the factor. But the law is otherwise; the vendee is originally liable to the principal, and the factor's responsibility is only auxiliary. There are two securities, and not one only. Ex parte Murray, Cooke, Bankr. Laws, 400, is in point. Also, 1 Mont. Bankr. 577; Bull. N. P. 42; 3 Willes, 187; Scrimshire v. Alderton, 2 Strange, 1182; Estcott v. Milward, 7 Term R. 359, note; Mace v. Cadell: Cowp. 232; 13 Vin. Abr. "Factor C." p. 4; 2 Marsh. Ins. 295; 1 Liverm. Princ. & Ag. 274, 275. The cases in respect to mutual credit do not apply here. They only respect the vendee and factor; not the right of the principal. 7 Term R. 359. The case of Grove v. Dubois, 1 Term R. 112, has been doubted. 2 Mont. Bankr. 128. He cited, also, Ex parte Dumas, 1 Atk. 232; 2 W. Bl. 1154; 3 Burrows, 1368; 18 Ves. 239; 2 Vern. 638; 5 Term R. 227; 3 Maule & S. 562.

William Sullivan, for defendants.

The plaintiff was not owner of these notes. They were the notes of the factors taken in their own name, though for the sale of the goods of the plaintiff. The factors acted under a del credere commission; this made them in effect, as to the plaintiff, principals, and not merely collaterally liable. A factor del credere is directly liable. Grove v. Dubois, 1 Term R. 112. The plaintiff could never have recovered these notes from the factors in any suit. If the principal will release the factors from the guaranty, he may entitle himself to the notes, paying the commissions and charges; but not otherwise. The principal could not, in a case like this, if the notes had been paid to the factors, have sued the factors for money had and received; but his remedy must be by suit on the guaranty. Gall v. Comber, 1 Moore, C. P. 279; Baring v. Corrie, 2 Barn. & Ald. 137; Mackenzie v. Scott, 6 Brown, Parl. Cas. 280. The case here is not like cases under the bankrupt act. The assignees here took for creditors, and received the notes in part payment of their debts. Paley, Prin. & Ag. p. 39. Under the bankrupt act, the party is discharged by the act of the creditors. Here, it is a private

agreement and discharge and in consideration of a private assignment.

Mr. Hubbard, in reply.

Whether the plaintiff can recover or not depends on this, whether he had property in the notes. If he had, the money received by the assignees was to his use. If the goods had not been sold, the assignees could not, on such an assignment, have held them. We contend, that these notes were the plaintiff's, as much so as the goods. The money received was therefore the plaintiff's money. The assignees were but trustees of the factors.

STORY, Circuit Justice. In this case the sole question is, whether the notes taken in payment for the goods of the plaintiff, upon the sale by Messrs. Winslow, Channing & Co. were the property of the latter at the time of their failure. If so, then they passed by the assignment to the defendants; if not, then the present action is completely sustained. Nothing is better settled at the present day than the doctrine, that the principal is entitled to recover, whenever he can trace his own property and distinguish it, or its proceeds, from the mass of the property of his factor. If it has been sold and notes taken in payment, and these can be specifically ascertained, they remain the property of the principal, and he has a right to receive them, discharging at the same time any lien of the factor. I need not cite authorities on this point. They are very numerous, and have ably collected in Mr. Livermore's very valuable treatise on Agency, and in Mr. Montague's on the Bankrupt Laws. 1 Liverm. Princ. & Ag. (1818) p. 267, c. 7; Mont. Bankr. Laws (1819) p. 577, c. 40. The case of Scott v. Surman, Willes, 400 (see, also, Taylor v. Plumer, 3 Maule & S. 562), is a leading case on the subject; and in it, Lord Chief Justice Willes, with his accustomed diligence, accuracy, and learning, has summed up and expounded the general principles and authorities. That case completely disposes of this, for there the factor took the notes payable to himself, or order, unless the fact, that the factors were acting under a commission del credere, or, in other words, were guarantees of the payment, changes the legal posture of the parties. And it is insisted, that the guaranty made the notes the absolute property of the factors. That is a proposition, however, extremely difficult to be maintained upon principle, and as little consonant with authority.

It is true, that in Grove v. Dubois, 1 Durn. & E. [Term R.] 112, which was the case of a policy broker. Lord Mansfield lays down the doctrine, that a commission del credere is an absolute engagement to the principal from the broker, and makes him liable in the first instance without any necessity of resorting to the purchaser, or other contracting party. And Mr. Justice Buller, in the same case, said, that a previous demand and refusal of the debtor had never been in practice required. Whether this doctrine can now be supported is matter of great doubt. It has been questioned by a very acute reporter, (7 Taunt. 480, note a), and seems utterly at variance with the decision of Lord Chief Justice Gibbs, in a recent case. Peele v. Northcote, 7 Taunt. 478. He there said, speaking of a policy broker, that he "was to guarantee all the underwriters for a del credere commission, and was therefore, it was quite clear, liable only in the second instance to make good the loss, in case a loss should arise." Lord Ellenborough too, in delivering the opinion of the court, in Morris v. Cleasby, 4 Maule & S. 566, expressly declared, that the court could not accede to the proposition laid down in Grove v. Dubois. "The doctrine so laid down," says he, "appears to us to reverse the relative situations of principal and factor, and to have a tendency to introduce uncertainty and confusion into the law on this subject." See, also, Gall v. Comber, 7 Taunt. 558. But it is not necessary to consider this point, because Lord Mansfield, in the same breath admits, that the law allows the principal, in such a case, for his benefit, to resort to the debtor, as a collateral security. This is a plain admission. that the property in the policy is not, by the guaranty, vested absolutely in the broker, but that the assured might control it. It tacitly concedes, that a guaranty does not vest any title in the broker, which the law would not otherwise vest in him. In truth, the case before his lordship did not call his attention to the rights of the principal in this respect, but merely to the right of set-off by the broker against the underwriter, as a case of "mutual credit," under the bankrupt acts. And for the same reason we may dismiss the later cases, which have turned upon similar discussions. See Baker v. Langhorn, 4 Camp. 396, and note. 399; Koster v. Eason, 2 Maule & S. 112; Morris v. Cleasby, 4 Maule & S. 566. Lord Ellenborough, in one of them, uses this strong language, "that the broker, with a del credere commission, may be looked upon as the owner of the policy, and he being answerable to the insured for the loss, the amount may be considered as due to him." Wienholt v. Roberts, 2 Camp. 586. It may be so as between the broker and underwriter on a set off of "mutual credit;" but it is quite a different question as between the broker and his principal. For, as between the latter, the cases abundantly show, that the insured is the real owner, subject only to the lien of the broker. See Cumming v. Forester, 1 Maule & S. 494; Peele v. Northcote, 7 Taunt. 478. The analogy, therefore, so far as it bears upon the present question, is against the distinction, which the defendants attempt to set up.

The case of Mackenzie v. Scott, 6 Brown. Parl. Cas. 280, has also been cited in support of this distinction; but upon examination it

will not be found to apply. It is not very easy to ascertain upon what precise point that judgment turned, as no reasons are given by the house of lords. But it may be gathered from the facts, that the principal controversy was, whether a factor, with a del credere commission, was discharged from liability by remitting the amount to his principal in an unproductive bill, payable to and endorsed by the factor. It was decided, that he was not; and as it may be fairly presumed, either upon the common ground, that the factor was liable upon his indorsement, or, that the bill was not received as an absolute payment, so as to extinguish the guaranty. At all events, it is no rashness to assert, that it steers wide of the present question.

The case of Gall v. Comber, reported in 1 Moore, C. P. 279, and 7 Taunt. 558, turned upon this point, that at all events the principal could not maintain a suit of indebitatus assumpsit for goods sold and delivered against his factor del credere, after a sale of the goods; for if the factor was strictly liable to the principal, he was not as purchaser of the goods, but as making a contract of a peculiar nature, and that it ought to be specially laid in the declaration, as arising from the del credere commission. And at the trial, Lord Chief Justice Gibbs considered it as merely a guaranty, that the price should be paid. So far as this case goes, it shows that the factor does not become the purchaser of the goods by a sale under a del credere commission. The view thus taken of a del credere commission is confirmed by what fell from Lord Ellenborough, in Morris v. Cleasby, 4 Maule & S. 566, 574. His language is: "The guarantee is to answer for the solvency of the vendee, and to pay the money, if the vendee does not; on the failure of the vendee he is to stand in his place, and to make his default good. Where the form of the action makes it necessary to declare on the guaranty, application to the principal must be stated on the record."

No other cases have been cited by the defendants, that require any particular observation. I will now shortly advert to those, which establish a doctrine wholly inconsistent with the argument of the defendants. And first, the case of Scrimshire v. Alderton, 2 Strange, 1182. There the plaintiff consigned some goods for sale to a factor, with a del credere commission. After the sale, and before payment by the purchaser, the factor failed, and the plaintiff brought his action after notice and demand against the purchaser to recover the amount. Lord Chief Justice Lee held, against the opinion of a special jury, that the plaintiff was entitled to recover, upon the ground, that the factor's sale created a contract between the owner and the buyer. And his opinion was afterwards confirmed by the whole court; and has ever since been held to be good law. See Estcot v. Milward,

cited in Cooke, Bankr. Law, 383. The doctrine in Bull. N. P. 130, is therefore overruled. Here then we have a direct authority, that the guaranty did not change the relation of the factor; and that the money due was still the money of the principal. If this be so, what difference can it make, that a note has been taken to secure the payment? Must not an instrument, which merely evidences, but does not extinguish, the debt, follow the nature of its principal? If the owner is entitled to the debt, is he not entitled to that, which was taken to evidence it? I meddle not with the fact, that here there were negotiable instruments. If they had been negotiated, and the money received by the factors, in the course of business, that would have deserved a very different consideration. But let the rightful possession of the notes be in whom they may, if the money due was still, notwithstanding the guaranty, the money of the plaintiff, when the defendants received it, it was, in point of law, upon the authority of this case, money had and received to his use. To the same effect is Ex parte Murray, Cooke, Bankr. Law (8th Ed.) 384, where the lord chancellor held, that money received by the assignees after the bankruptcy, in payment of goods sold by the bankrupt under a del credere commission, belonged to the owner of the goods, and decreed the assignees to pay it accordingly.

No answer has been given to these decisions, except that they arose under the bankrupt laws. But that circumstance would make them of stronger application on the other side, if they were contested upon the ground, not of real ownership, but of reputed ownership under the bankrupt act of 21 Jac. I., c. 19, § 11. It does not however appear, that in Scrimshire v. Alderton the case arose in bankruptcy. The case of Robson v. Wilson, reported by Mr. Marshall in his work on Insurance (1 Marsh. Ins. bk. 1, p. 295, c. 8, § 2), is a very strong authority to the same effect. There, Wilson, a broker at Liverpool, was in the habit of sending orders to Stoddart, a broker at Newcastle, to effect insurances. Wilson, for a del credere commission, guaranteed the premiums on all the orders, and was to pay them, as received, to Stoddart, and Stoddart was to pay all losses, and for a like commission Stoddart also guaranteed the premiums to the underwriters. Stoddart became bankrupt, and at the time of his bankruptcy £79 were in the hands of Wilson, being the premium on a policy underwritten by one Robson, the plaintiff. The latter had settled accounts for premiums with Stoddart, and taken his notes for the general balance, and brought his action against Wilson for the £79, as money received to his use. The court held him entitled to recover. And Lord Kenyon, on that occasion, said: "Where a factor has received money belonging to his principal, and it becomes blended

with his own estate, and cannot be distinguished from it, the principal must come in with the general creditors. But here it is clearly distinguishable from the bankrupt's estate. Before it is paid to the factor del credere, he becomes a bankrupt; it is therefore no part of the general fund, and the principal has a right to claim it." Here is a case decided with no reference to any peculiar doctrine in bankruptcy; but standing on general principles, and necessarily affirming, that a del credere commission did not create an original ownership of the premium in the broker, or change the general relation between the principal and the underwriter, as debtor and creditor.

If then these decisions constitute the law, (and they have been no where denied, but on the contrary, referred to by the best elementary writers,—1 Mont. Bankr. 577, c. 40; 1 Cooke, Bankr. Law, 4th Ed., 400, etc.,— as settling the doctrine,) there is an end of the defence, and judgment must be given for the plaintiff. And I may add, that our own state court has fully recognised the doctrine. In Kelley v. Munson, 7 Mass. 319 (see, also, Price v. Ralston, 2 Dall. [2 U. S.] 60; Messier v. Amery, 1 Yeates, 540; Hourquebie v. Girard [Case No. 6,732]; Whart. Dig. 10, pl. 39), Mr. Justice Sewall, referring to the case of a guaranty, admits, that the principal may intercept the debt in the hands of the buyer, not prejudicing thereby any right of set-off in the latter against the factor, who deals in his own name, without disclosing the agency. And upon principle, if there were no authority in point, the result must be the same. The moment it is conceded, that notes taken by the factor in his own name, in payment for the goods of the principal, when identified, are the property of the principal, (and the authorities on this point are entirely conclusive,— Scott v. Surman, Willes. 400; Ex parte Dumas, 1 Atk. 232; Ex parte Emery, 2 Ves. 674,)—it can make no legal difference, whether the factor be with or without a commission del credere. What is the nature of such a guaranty? It is merely an undertaking to pay, in case there should be a failure of payment by the buyer. It is not a direct, original liability to the principal, in the same way as if the factor was himself the purchaser, excluding the liability of the real purchaser. The principal may, at any time, waive the guaranty and claim possession of the notes from the hands of the factor, discharging any lien of the latter. In short, the guaranty does not any more transfer such notes to the factor as property, than a guaranty of any other notes held by the principal, not arising under factorage business. Suppose the buyer should actually pay the money to the principal, what pretence would there be for the factor to recover it back from the principal? Upon reason, upon the nature of the contract, upon general justice and equity, the produce of

property ought to belong to the owner, if it is distinguishable from that of the factor. His undertaking that the owner shall, at all events, receive it, in no shape changes the nature of the property, or the rights of the owner, growing out of that consideration. The factor, without a commission of del credere, has but a lien on the proceeds for his charges; with it, he has still but a lien for additional charges, growing out of the extraordinary responsibility. The character of the transaction is not thereby changed in its nature, but only in degree. A guaranty superinduced after the sale would not change the property in the notes. Why then should an antecedent guaranty?

My opinion, upon the most mature reflection, is, that the plaintiff is entitled to judgment for the full amount of all the notes of which the defendants have received payment. Judgment accordingly.