Francisco Roca et al., Respondents, *v.* Anna D. Byrne, as Executrix, etc., Impleaded, etc., Appellants.

A principal is entitled in all cases to re-claim his property intrusted to his agent, or the avails thereof if it has been converted into money, where he can trace the property or its avails, whether in the hands of the agent, his representative or a third person.

Where, therefore, the principal is able to trace a remittance of bills of exchange sent to his agent for the purpose of putting the latter in funds

to meet expenditures and liabilities incurred by him, and the remittance is in excess of what was needed to discharge the principal's indebtedness in account with the agent, and where the principal is able to distinguish with absolute certainty the moneys deposited in bank as such avails, he is entitled to recover the same ; and this, although the avails were deposited to the credit of the agent's private account.

B., in his lifetime, was the agent in the city of New York for plaintiffs, who were carrying on business in Ecuador. Plaintiffs consigned merchandise to B. for sale, the proceeds being credited to their account. B. purchased goods for plaintiffs, which were paid for out of the avails of such sales, or by bills of exchange drawn on plaintiffs; they also drew bills on B., which he accepted, paid and charged to their account. The accounts were settled semi-annually. B. kept his bank account with defendant, the C. E. Bank, to the credit of which his own moneys as well as those belonging to plaintiffs were deposited. Prior to his death he himself, and, after such death, persons claiming to act for his estate, received from plaintiffs bills of exchange, the avails of which were deposited to said account. B. died insolvent. In an action brought to compel said bank to pay from the balance standing to the credit of B. in said bank account, which balance it appeared was wholly derived from the avails of said bills of exchange, a balance due plaintiffs on their account with B., *held*, that while as between plaintiffs and B. the relation of debtor and creditor existed according as the accounts showed a balance due to the one or the other, this did not affect the fact that the relation was of a fiduciary character ; that the avails of the bills in excess of what was due B. belonged to plaintiffs, and they had the right in equity to follow them ; that the fact that such avails were deposited to the credit of B.'s account did not affect the question as to whom they belonged ; and that plaintiffs were entitled to the relief sought.

Reported below, 68 Hun, 502.

(Argued February 6, 1895 ; decided February 26, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made April 14, 1893, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The action is brought against the executrix of Daniel Byrne, deceased, and the Corn Exchange Bank, to obtain a judgment directing the latter to pay to the plaintiffs certain moneys standing to the credit of the deceased ; claimed by them to be the proceeds of certain drafts transmitted to the deceased as

their agent and to have been received by him in such fiduciary capacity. The following were the facts: The plaintiffs were co-partners, carrying on business, under the firm name of Roca & Henriques, at Guayaquil, Ecuador. In February, 1888, Daniel Byrne became their agent in New York city and continued as such, until his death on August 2d, 1891. The plaintiffs were accustomed to consign merchandise to Byrne for sale, the proceeds of which were credited to the account of the principals. Byrne also purchased goods at the city of New York for, and shipped them to the plaintiffs, which were paid for by the avails of goods consigned to and sold by Byrne, and by bills of exchange sent to him by the plaintiffs. The plaintiffs were also accustomed to draw bills on Byrne, which he accepted, paid and charged to their account, and interest was charged on the balances against whichever party happened to be the debtor. Every six months the account was settled. On June 30, 1891, a settlement was had of all unsettled matters, and a balance of $24,953.63 was found to be due to Byrne. Six bills, amounting to $9,721.58, drawn by plaintiffs, accepted by Byrne and charged in the account of June 30th, fell due after that date, but were not paid by Byrne, and were thereafter paid by the plaintiffs, which reduced their indebtedness to him to $15,232.05. Between June 20th and August 1, 1891, the plaintiffs sent Byrne nine bills drawn on various persons and firms amounting to $18,313.69, which he and his representative received and collected, so that the balance due from his estate when this action was begun was $3,081.64. During the period covered by the transactions involved in this litigation, Byrne kept an account with the Corn Exchange Bank, to the credit of which all his own money, as well as the avails of merchandise and bills of exchange received from the plaintiffs, were deposited, and against which he drew for his own account and benefit, and also in conducting the business of the plaintiffs. On July 25, 1891, Byrne received from the plaintiffs two bills of exchange amounting to $2,774.26, which on that day he deposited in said bank to the credit of his account. On July 30, 1891, he received from plaintiff a bill of

exchange for $2,000, which on the same day he deposited in said bank to his credit. On August 2, 1891, Byrne died insolvent. On August 5, 1891, some person claiming to act for the estate of Byrne received from the plaintiffs a bill of exchange for $440, the avails of which, amounting to $439.63, were on the same day deposited to the credit of said account in said bank, and on August 31, 1891, some person claiming to act for the estate of Byrne received from the plaintiffs a bill of exchange for $600, the avails of which were on the same day deposited to the credit of said account in said bank.. The bills described, aggregating $5,313.89, were four of the nine bills which aggregated $18,313.69. When the action was commenced the balance of $4,514,05, in the defendant bank to the credit of the deceased, or of his estate, was derived from the four above-mentioned bills of exchange. The plaintiffs had judgment in their favor at the Special Term; which was affirmed on appeal to the General Term; and the defendant appeals to this court.

*Theron G. Strong* for appellant. The proceeds of the drafts in question were not impressed with a trust in favor of the plaintiffs, but were in reality a part payment on running account of a balance due from plaintiffs to Byrne. (*Cowperthwaite* v. *Sheffield*, 3 N. Y. 243; *People* v. *M. & M. Bank*, 78 id. 269.) The course of dealing between the plaintiffs and Daniel Byrne, and the instructions given by the plaintiffs as to the disposition of the proceeds of the drafts in question, show conclusively that the relation of debtor and creditor only existed between them as to said moneys, and that the same were not impressed with a trust. (*E. N. Bank* v. *F. N. Bank*, 46 N. Y. 82; *Butler* v. *Sprague*, 66 id. 392; *Goodrich* v. *Dunbar*, 17 Barb. 644; *Bussing* v. *Thompson*, 15 How. Pr. 97; *Duguid* v. *Edwards*, 50 Barb. 288; *Baker* v. *N. Y. N. E. Bank*, 100 N. Y. 31.)

*Michael H. Cardozo* for respondents. The relation between the parties was the fiduciary one of principal and

agent, and the plaintiffs having traced the proceeds of their drafts into the agent's bank account, they were entitled to the amount due them. (*Moffat* v. *Fulton*, 132 N. Y. 507.) When an agent receives money or property from his principal, they may be reclaimed as between the parties, and before other persons have in good faith acquired rights in them, so long as the money or the avails of the property can be traced. (*Newton* v. *Porter*, 69 N. Y. 133; *Van Alen* v. *A. N. Bank*, 52 id. 1; *Cavin* v. *Gleason*, 105 id. 256; *Holmes* v. *Gilman*, 138 id. 369; *N. Bank* v. *Ins. Co.*, 104 U. S. 54; *U. S. Y. N. Bank* v. *Gillespie*, 137 id. 411.) If Byrne had lived he would, under the authorities, have been liable to arrest for a failure to pay over the proceeds of plaintiffs' drafts. (*Wallace* v. *Castle*, 14 Hun, 106; *Duguid* v. *Edwards*, 50 Barb. 288; *Moore* v. *Hillabrand*, 37 Hun, 491.)

Gray, J.    This is a somewhat peculiar case upon its facts and the question is whether the plaintiffs, having traced the avails of the drafts, which they had remitted to their agent, shall have them, as against the claims of other creditors upon the insolvent estate of Byrne. The general and well-recognized rule is, and has been, that a principal is entitled, in all cases, when he can trace his property, whether it be in the hands of the agent, or of his representatives, or of third persons, to reclaim it and it is immaterial that it may have been converted into money; so only that it is in condition to be distinguished from the other property or assets of the agent. (Story on Agency, § 231; *Thompson* v. *Perkins*, 3 Mason, 232; *Robson* v. *Wilson*, 1 Marshall Ins. 205; *Van Alen* v. *American Nat. Bank*, 52 N. Y. 1; *Importers'*, etc., *Bank* v. *Peters*, 123 id. 272.) The difficulty, here supposed to prevent the application of the general rule, arises in the nature of the course of dealing adopted; which, as it is argued on behalf of the appellant, shows that the relation of debtor and creditor, only, existed between the plaintiffs and their deceased agent. The moneys, it is insisted, proceeding from the drafts remitted to Byrne, were not

impressed with any trust; but were in part payment on account of a balance due from the plaintiffs. It is undoubtedly true that the relation of debtor and creditor existed, according as the state of the accounts showed the balance to be one way or the other; but that fact was not inconsistent with, and could not affect, the fact that the relation was also of a fiduciary character. Byrne received all drafts in virtue of his agency and they, or the proceeds, were received for purposes connected with that agency. It was not necessary that they should have been remitted against any specific obligations. They may have been remitted generally and generally credited in the account; but their purpose was to discharge obligations incurred, or to be incurred, or disbursements made, by their agent for them. What was the evident, the indisputable fact here? Plainly, that there resulted an excess, over what was incumbent upon the plaintiffs to pay, of a sum of money, which was not Byrne's; but which belonged to the plaintiffs. This excess being unused, or not required for the purpose for which remitted, how could Byrne, or his representatives, claim it, in equity? The legal title to the moneys may have been in him; but the right, in equity, to follow them, as the proceeds of their drafts, was in the plaintiffs. If Byrne, or his representatives, placed the moneys in the bank to the credit of his account, that would not affect the question as to whom they belonged beneficially; a question which equity, in a proper case, will always inquire into. If received, as here, in the course of transactions between the principal and the agent, the character of the moneys would be unchanged by the deposit; provided they could be identified. They would still be moneys held for the principal. However peculiar the circumstances here, from the particular course of dealing, the cardinal fact stands out, that the plaintiffs' property was sent to their agent, as such, and for purposes comprehended within the agency. The case cannot be likened to that of bills sent on general account between a merchant and his correspondent; nor to the case of the deposit of bills on a general running account with a banker and without specific

appropriation to other bills.   It is more like the case supposed by Lord Chancellor COTTENHAM, in his opinion in *Jombart* v. *Woollett* (2 Myl. & Cr. 390), who, stating the result of the law as laid down in some cases cited, said : " Unless there be a contract to the contrary, if a person, having an agent elsewhere, remits to him, for a particular purpose, bills not due, and that purpose is not answered, and then the agent carries them to account, and becomes a bankrupt, the property in the bills is not altered, but remains in the party making the remittance." In *Veil* v. *Administrators of Mitchel* (4 Wash. C. C. 105), the plaintiffs sent the defendant's intestate two bills of exchange, with instructions to remit the proceeds.   The intestate sold the bills; remitting a part of the proceeds of one; but keeping the rest and a post dated check which had been taken for the other.   He died before the maturing of the check; which was collected by his administrators.   On another account the plaintiffs were indebted to the intestate in a certain balance.   The intestate died insolvent and the question reserved for the court was, whether the plaintiffs are entitled to recover the amount of the check and of the unremitted portion of the proceeds of the other note, after deducting what was due upon another account to the intestate.   Mr. Justice WASHINGTON rendered judgment for the plaintiffs, upon the principle that, "where the principal can trace his property into the hands of his agent or factor   *   *   *   he may follow it, either into the hands of the factor, or of his legal representatives, or of his assigns, if he should become insolvent or a bankrupt."

If it be objected that the proof here is that the bills were not remitted for a particular purpose; but generally on account of all obligations incurred and disbursements made by Byrne on account of plaintiffs, I think that is not a substantial distinction.   The remittances were, in fact, to an agent for a purpose within the scope of the agency and to meet the obligations or expenditures incurred for the remitters by the agent. I think, within the stipulated facts, the purpose of the remittance may be regarded as a particular one.   We might paraphrase it as a general remittance for the particular purpose

of furnishing moneys to the agent, to cover the obligations and liabilities incurred by him as such.

If the business relations between the plaintiffs and Byrne had been of the character of such which ordinarily exist between merchants and their correspondents, there would be no case; but it is because Byrne was the plaintiffs' agent, that property, received by him for them, became impressed with a trust character and, if not disposed of, in good faith, to others, and if distinguishable from the agent's property, could be re-claimed by the principal, as against the general creditors of the agent. I am unable to see that, in truth, the nature of the dealings between the parties, of which so much has been made, necessarily did deprive their relations of their fiduciary character. The manner of his keeping the account, or of stating half-yearly balances, and the general nature of a remittance to him upon account, are facts, which need not have changed and, in my opinion, did not change the fiduciary nature of the relation held by Byrne to the plaintiffs. Under the conceded facts of the case, whatever he did, he did as their agent. The duties enumerated as devolving upon and performed by him were all consistent with his acting therein as agent.

In the account of June 30th, 1891, showing a balance against the plaintiffs of $24,953.63, was included $9,721.58 of acceptances by Byrne, maturing after that date and which were not paid by him, but which were eventually paid and taken up by the plaintiffs. The plaintiffs' indebtedness to him was, therefore, only $15,232.05. The drafts remitted by plaintiffs between June 20th, 1891, and August 1st, 1891, and realized upon and credited to Byrne's account in the bank, amounted to $18,313.69. There was, therefore, an excess over the amount necessary to discharge the indebtedness to the agent of $3,081.64. Can it be said that these moneys did not, in equity, belong to the plaintiffs? I cannot see it otherwise than in that light. I think it is a very plain case, where the principal has been able to trace a remittance of bills, made for the purpose of putting his agent in funds to meet expendi-

tures and liabilities incurred on his account and in excess of what was needed to discharge their indebtedness in account, and where it has been possible to distinguish the moneys in bank as the avails of those bills with absolute certainty. That the proceeds of plaintiffs' drafts did not, by being deposited to the credit of Byrne's bank account, lose their character, is indisputable. In *Van Alen* v. *The Bank*, (*supra*), the money sought to be recovered was mingled with some of the agent's own money; but this was deemed of no consequence. The controlling fact was that the plaintiffs' moneys were in the bank. In that case the authority of the *Ætna Bank* case, (46 N. Y. 82), was not deemed in point; inasmuch as there was no question of title in the plaintiff; but, merely, of the discharge by the defendant bank of an obligation to a depositor.

I think the affirmance by the General Term was correct and that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.