HARVEY BROKERAGE CO., Inc., v. AMBASSADOR HOTEL CORPORATION.

CENTRAL HANOVER BANK & TRUST CO. v. AMBASSADOR HOTEL CORPORATION et al.

In re BUTLER.

District Court, S. D. New York.

April 8, 1932.

Frank C. Bowers, of New York City, for petitioner.

Dawes, Abbott & Littlefield, of New York City (Charles W. Littlefield, of New York City, of counsel), for receivers of Ambassador Hotel Corporation.

WOOLSEY, District Judge.

The petition herein is granted, but without costs.

I. The facts involved in this extremely interesting application are common ground between the parties.

On December 9, 1931, in the suit of the Harvey Brokerage Company against the Ambassador Hotel Corporation, at the request of both parties, the Irving Trust Company and Frank W. Kridel were appointed temporary receivers in equity of the Ambassador Hotel Corporation, and immediately qualified and took possession of its properties

and moneys within the district. Thereafter, by order dated January 19, 1932, the receivership was extended to a suit against the Ambassador Hotel Corporation by the Central Hanover Bank & Trust Company, as trustee under a mortgage. Thereafter, by an order made February 4, 1932, after due hearing, the receivership in both its aspects was made permanent.

The petitioner, John A. Butler, has for some years been head porter of the Ambassador Hotel, located at the northeast corner of Fifty-First street and Park avenue, New York City. On January 3, 1928, after he had been long acting in that capacity, he entered into a written contract with the hotel whereby he was to pay to the hotel $225 per month, or $2,700 per year, as a consideration for a concession that he might continue to occupy the position of hotel porter and perform on the hotel premises his duties as such with included maintenance of a messenger service.

This concession contract had been modified about March 1, 1931, when it had been agreed that, if Butler would not give up his concession as he threatened to do because of the decrease in his earnings, he might continue as head porter without payment of further rent. Except for this change, the concession contract continued to and was in force on December 9, 1931, when the receivers were appointed.

The terms of the concession contract must be borne in mind in connection with the present application. In the sixth paragraph thereof it was provided in part as follows: "It is expressly agreed and understood that the party of the second part (Butler) is an independent contractor, and is solely and directly liable to any guests or other persons for whom he may transport baggage or from whom he may have any baggage entrusted to his care and for whom he may perform any services, and the party of the second part (Butler) hereby assumes all liability and responsibility for all damage, loss or theft of property and with respect to the damage or injury to person or property of any member of the public by reason of the operation of any wagon or truck by the party of the second part (Butler). * * *"

Then follows, in the same paragraph, a clause by which Butler agreed to indemnify and hold the hotel harmless from any claims by guests arising out of transportation of their luggage or injury to their persons due to his negligence, and also that he will defend suits, if any, brought against the hotel in that regard. There was a further provision for the deposit by Butler of a bond in the sum of $1,000 as security for the performance of his contract.

So far as the financial relations between the parties are concerned, the gist of them is contained in the fourth paragraph of the contract as follows: "The party of the second part (Butler) shall be entitled to hold and collect all fees and charges for the transportation of such baggage and for such messenger services provided, however, at no time shall the party of the second part (Butler) make any charge in excess of the customary and reasonable charges from time to time in effect in the city of New York. It is further agreed that where charges are incurred by the guests of the hotel and advanced by the party of the first part (the Hotel) to the party of the second part (Butler), the amount so advanced is to be refunded to the party of the first part (the Hotel) if said guests do not pay the party of the first part (the Hotel) within sixty days after the rendering of a statement thereof."

It will be seen from this that under the terms of the contract, under which, admittedly, the parties were operating at the time of the receivership on December 9, 1931, Butler, as head porter of the hotel, dealt directly with the guests, and thus when he advanced money to them he was making such advances on their credit and not on the credit of the hotel. Moreover, if, for his own convenience, Butler needed some money from the hotel temporarily to replace those advances, he had to return it if the hotel was not reimbursed by the guests within sixty days.

Consequently, although doubtless the guests assumed that Butler was the agent of the hotel, he was in fact vis-à-vis the hotel dealing as an independent person, and, indeed, was himself performing a part of the functions which guests expect from a first-class hostelry.

Although not expressly provided in the agreement, it had always been the course of business between Butler and the hotel, as a convenience to all the parties concerned—the guests, the hotel and Butler—for the hotel to include in its bills, and to collect from its guests, the amounts which were advanced by Butler to them for railroad tickets, transfer of luggage, together with his fees for such services, and charges for messenger service and other accommodations which he may have rendered to them.

From time to time, some times daily, some times weekly, some times fortnightly, but, ap-

parently, always, on demand, the hotel paid to Butler the amounts thus collected.

During the last nine days before this court, by its receivers, took charge of the Ambassador Hotel, Butler had advanced to guests, in the purchase of transportation, for the transfer of luggage, and for messenger services, a total of $2,671.89.

The hotel had billed its guests for this money, as usual, and had collected it from them before the receivership, and, at the time of the receivership, it is common ground that the funds representing these advances by Butler were in the possession of the hotel and were turned over with its other properties and moneys to the receivers.

When duly requested to pay these moneys over to Butler, the receivers refused to do so on the ground that the relationship between the hotel and Butler was merely that of debtor and creditor.

The contention of the petitioner, Butler, and his counsel, is that, when he turned over his claims against the guests of the hotel for collection by the hotel, the hotel took his claims over in effect as his fiscal agent, and, consequently, in a fiduciary capacity; that it was bound to account to him for any collections made by it from its guests of these claims, and that Butler is entitled to impress a trust on these funds in the hands of the receivers and have them paid over to him on this reclamation petition.

Fortunately, we are not involved here in any question tracing funds. The sole problem before me is the inference which I should properly draw as to the relation between Butler and the hotel from the circumstances above noted.

■ II. The technique of approach to the solution of this question seems to me to be this: When A turns over to B some of his property to be sold or evidence of debts owed to him which he wishes to have collected, the presumed intention of both parties is that B is to keep the funds which are proceeds of the sale or of the collection intact and turn them over in due course to A, and not that B may use them for his own purposes and later pay other moneys over to A.

This presumption, which is true because it springs from the common understanding of all men in such relations, may, of course, be rebutted expressly or by implication from agreements between the parties in regard to some incident of their relationship which may be inconsistent with any other construction thereof than that B is to have the use of A's money before he remits it and so is A's debtor merely. If, for example, B is to pay interest to A so long as he retains the money which he has collected for A, or if by a long-established course of dealing between them, or by the custom of the particular business in which they are jointly participating, B has the right to commingle A's money, when collected, with his own, and use it for his own purposes as would a bank in which A was a depositor and which had collected notes for him, the relation is that of debtor and creditor.

Although, in the circumstances above outlined, for one such reason or another the relation of debtor and creditor is, perhaps, far more frequent between principal and agent than the relation of fiduciary and beneficiary, it must not be forgotten that the latter is the normal relationship when one man asks another to sell his property or collect his debts for him, and that the relation of debtor and creditor is a departure from the normal due to one of the reasons above mentioned or others of similar kind.

■ III. Accordingly, assuming the burden of proof to be on Butler throughout, when, as here, it is shown that he has asked the hotel to collect moneys for him, he has shown a relation which is prima facie fiduciary. To escape from the implications inherent in that relation, the hotel must, so to speak, go on with the evidence, and produce a basis for a contrary inference by showing some facts which dilute this prima facie fiduciary relation into the looser relationship of debtor and creditor.

Now, we have not in this case any fact with which to effect this dilution.

In the first place the hotel did not guarantee Butler against loss in the event that he made advances to the guests. There is not, therefore, any del credere element in the position of the hotel as his agent, although, in my opinion, that would not make any difference, cf. Mr. Justice Story, in Thompson v. Perkins, 23 Fed. Cas. 1066, No. 13,972; on the contrary, it was here agreed that, if the hotel reimbursed Butler any of the advances, which he had made to guests, and the guests did not pay the advances to the hotel within sixty days, Butler had to repay them to the hotel.

In the second place, it does not appear that the hotel allowed Butler any interest during the period whilst it still held any amounts which it might have collected on his claims. If it had done so, that would,

of course, have been conclusive evidence of a debtor and creditor relationship, for "if a man pays interest for money he must be entitled to the use of it." Ex parte Broad, 13 Q. B. D. 740, 746.

In the third place, there was not any fixed period during which the hotel was entitled to keep the collections made by it for. Butler. Apparently they were payable to Butler on demand.

There are not, therefore, in this case any of the expectable indicia of a debtor and creditor relationship.

Consequently, I find that Butler has stated in his petition the fiduciary relation which presumptively arises when one man asks another to collect his debts for him and remit them to him on demand, and that there has not been anything here shown to rebut this presumption.

IV. I do not find any authorities, controlling on me, lying athwart what I regard, for the reasons given, as the path of justice here.

Counsel have been diligent and I myself have made a careful search of the authorities, but it has not been possible to find many cases in which situations analogous to that before me have come before the courts.

However, there is a decision by Judge Grubb, In re Steele-Smith Dry Goods Co. (D. C.) 298 F. 812, involving an independent corporation as concessionnaire in a department store which supports the result reached here. I prefer its reasoning to that of a decision to the contrary by Judge Dodge, In re Gilchrist Co. (D. C.) 208 F. 730, cited by the counsel for the receivers.

There are a number of decisions in New York state which could perhaps fairly be considered more hospitable to a fiduciary relationship in such a situation as that before me than the federal authorities are, although their analogy to the instant case is not nearly as close as is the decision by Judge Grubb. Cf. Roca et al., v. Byrne et al., 145 N. Y. 182, 189, 39 N. E. 812, 45 Am. St. Rep. 599; Baker v. New York National Bank, 100 N. Y. 31, 33, 34, 2 N. E. 452, 53 Am. Rep. 150; Van Alen v. American National Bank, 52 N. Y. 1, 4.

In Rhodes v. Little Falls Dairy Co., Inc., 230 App. Div. 571, at page 573, 245 N. Y. S. 432, the interesting suggestion is made that agencies like that under consideration here may be considered as sounding in joint adventure with the accompanying implications

—an analogy which occurred to me when I first began to consider this case.

In the Ninth Edition of his book on Agency, Mr. Justice Story, after dealing with wrongful acts by an agent, says at page 273, § 231: "The foregoing cases turn upon the wrongful conduct of the agent in the discharge of his appropriate duties. But the remedy of the principal, to recover back his own property, is not confined to cases where there has been some tortious conversion of it. On the contrary, if there has been no misconduct in the agent, the principal is entitled, in all cases, where he can trace his property, whether it be in the hands of the agent, or of his representatives or assignees, or of third persons, to reclaim it, unless it has been transferred bona fide to a purchaser without notice; subject, however, to the lien and other rights of the agent. And, in such cases, it is wholly immaterial, whether the property be in its original state, or has been converted into money, or securities, or negotiable instruments, or other property, so only that it is distinguishable and separable from the other property and assets of the agent, and has an ear-mark or other appropriate identity. Upon this same ground, if an agent purchases property for his principal, and takes a bill of sale in his own name, paying the money of his principal therefor, the latter may compel the agent to transfer the property to him. This is a very important right, especially in cases of the bankruptcy, insolvency, or death of the agent"—citing Taylor v. Plumer, 3 Maule & S. 562; Veil v. Mitchel, Fed. Cas. No. 16908, 4 Wash. C. c. 105; Thompson v. Perkins, Fed. Cas. No. 13972, 3 Mason, 232; Scott v. Surman, Willes, 400; Jackson v. Clarke, 1 Y. & Jerv. 216.

V. It matters not that the normal remedy in a situation of this kind would, of course, be an action for money had and received to Butler's use, under the common counts in indebitatus assumpsit. For, although that remedy is an equitable device long ago adopted by the common law in envious admiration of equity, Hunt v. Amidon, 4 Hill (N. Y.) 345, 349, 40 Am. Dec. 283; In re Stark (D. C.) 50 F.(2d) 260, 261, it would, if successful, have resulted in a money judgment only, and, despite its history, would have been a proceeding in personam, as distinguished from the present proceeding which is an equitable proceeding in rem.

A claimant may, of course, by the remedy which he seeks, select an attitude which

will make his status that of a general creditor. But if he have a higher status, he is not deprived thereof by having an alternate remedy which he decides not to use because it is inadequate to give him the relief to which he is entitled.

VI. The present application is a petition asking the court to direct its receivers to turn the moneys, which were collected for Butler, over to him on the ground of an impressed trust due to the unjust enrichment of the estate at Butler's expense. It is not unlike any other reclamation proceeding, and can only be justified, of course, vis-à-vis the general creditors on the ground that there is an identified res to which Butler has a superior equity.

That res here is the amount for which claims against guests turned over to the hotel by Butler were liquidated by the hotel, and which the receivers of the hotel now admittedly hold.

An order in accordance with this opinion may be presented for settlement on two days' notice, but it shall not provide for payment to the petitioner of interest or costs.