## QUANAH, ACME & PACIFIC RY. CO. v. WICHITA STATE BANK & TRUST CO.

### No. 4007.

Court of Civil Appeals of Texas. Amarillo.
April 19, 1933.

Rehearing Denied June 14, 1933.

C. Y. Welch, of Quanah, G. E. Hamilton, of Matador, and Goree, Odell & Allen, of Fort Worth, for appellant.

Marshall & Perkins, of Quanah, and Bullington, Humphrey & King, of Wichita Falls, for appellee.

MARTIN, Justice.

The action of the trial court in sustaining appellee's general demurrer is the only question presented for review.

Appellant's petition is lengthy. To conserve space we reproduce literally only so much of it as we deem necessary. Appellant is a railroad corporation, operating out of the city of Quanah, and has been since about the year 1909. From 1909 until about September, 1931, it had in its employment one T. K. Hawkins as its treasurer and auditor "whose duty was to collect and deposit all moneys and revenues arising from such business to plaintiff's credit in its depository bank at Quanah, which for many years had been and was still such depository on the last mentioned date, to-wit: the Security National Bank of Quanah." It was alleged, in substance: That much of the outbound freight moved on other roads and that the delivering carrier collected the revenues and distributed same among the carriers participating in the haul in accordance with the proportion earned by each. That the said T. K. Hawkins would draw a draft against the collecting carriers for the proportional amount of freight coming to appellant and deposit same in the said Security National Bank of Quanah. That about March, 1925, "the said T. K. Hawkins began the practice of withholding from deposit one or more of the drafts above described, for which he would request the Security National Bank to issue to him bills of exchange payable to him as treasurer * * * for varying amounts * * * and at his request said depository bank issued to said T. K. Hawkins many bills of exchange drawn against other banks * * * and which practice occurred practically every month from March, 1925, to August, 1931. That up to about the month of April, 1931, such bills of exchange were payable to T. K. Hawkins, Treas. * * * But after said date said bills of exchange were made payable to T. K. Hawkins, Treas., Q. A. & P. Ry. Co." That an example of the wording of one of such bills of exchange is the following:

"The Security National Bank of Quanah, Texas, Quanah, Texas, Jan. 31, 1930.

"Pay to the order of T. K. Hawkins, Treas. $417.65. Exactly Four Hundred Seventeen Dollars 65 cents. Exactly.

"To The Continental National Bank, Ft. Worth, Texas.

"H. M. Bumpass, Cashier."

It is further averred that such bills of exchange were indorsed "T. K. Hawkins, Treas."; that all of these bills of exchange were paid for by drafts drawn by T. K. Hawkins for freight as aforesaid and were each and all the property of appellant; that T. K. Hawkins embezzled, with the aid of appellee, Wichita Bank & Trust Company, the proceeds of bills of exchange between March, 1925, to September, 1931, in amounts which aggregated the sum of $63,054.65; that the scheme used by Hawkins was to indorse and deliver such bills of exchange to appellee, some of them personally and some of them by mail, each of them to be credited and were credited to his personal account and that all of the funds so deposited were withdrawn on the individual check of Hawkins; that the bank knew, by virtue of the form and contents of said bills of exchange and that T. K. Hawkins had indorsed same, that such bills of exchange were the property of appellant; that Hawkins was at the beginning of said transactions a stranger to the officers and employees of same and remained a comparative stranger to appellee throughout the period of time already mentioned; that during all of such time appellee knew that there were adequate banking facilities at Quanah and that Quanah was situated approximately eighty miles from Wichita Falls, which was the banking home of appellee; and that appellee at no time made any inquiry as to the cause or occasion of said unusual deposit or the use of the bills of exchange by the said Hawkins "but received and accepted same and received the proceeds thereof from the drawee banks in each instance with but the slightest investigation." The petition fur-

ther avers a lack of authority and right in Hawkins to convert to his own use the said bills of exchange or to indorse or negotiate same for his own personal use and benefit; that he was attempting in so doing to act both for himself and for said corporation; that by reason of these facts and circumstances, the said bank was charged with "actual knowledge that said Hawkins was so misappropriating and converting, with the aid and assistance of said defendant Bank, the funds, moneys and credit of plaintiff and by proper inquiry the said Bank could and would have prevented loss to itself and to this plaintiff."

This petition, in fact, specifically alleges knowledge on the part of appellee of said misappropriations and embezzlements but it seems to have been agreed in the trial court and acquiesced in by all parties in oral argument before this court, that it had only such knowledge as might be visited upon it by all the facts and circumstances connected with and surrounding the transactions leading to the acquisition of the funds aforesaid. The order sustaining the demurrer contains the following language: "It being understood that the court construes said petition of plaintiff to charge that Wichita State Bank & Trust Company, one of the defendants herein, was charged with notice that T. K. Hawkins was embezzling the funds of plaintiff, only by the facts and circumstances alleged in said petition, and does not charge that said Bank & Trust Company had any actual knowledge at any time prior to the time of the discovery of such embezzlements by plaintiff itself, and the giving of notice thereof to said Bank & Trust Company, that such funds were being embezzled by said Hawkins, except such notice as was visited upon said Bank & Trust Company by all the facts and circumstances connected with and surrounding the transactions leading to the acquisition of plaintiff's funds by said Hawkins as are alleged in said amended petition. In which interpretation of the pleadings by the court the attorneys for the plaintiff agreed."

We will, therefore, ignore every allegation in the petition other than facts and circumstances set out therein which were intended to bring notice and knowledge home to the bank of Hawkins' misappropriation of the funds in question.

We are inclined to agree with appellant's contention that the bills of exchange upon their face, with the indorsement thereon, sufficiently disclosed to appellee bank that they were trust funds not belonging to Hawkins. See Long v. City National Bank (Tex. Civ. App.) 256 S. W. 1006, 1008, and authorities there cited. Also article 5934, § 42, R. S. 1925. This will be assumed, as under our view of the law it is not necessary to discuss or decide this.

The real question here is whether or not allegations of the deposit of the proceeds of these by Hawkins to his personal account and their subsequent withdrawal by him, along with the other circumstances mentioned, sufficiently aver notice to the bank of an intended embezzlement of such funds by him. Or, stated otherwise, do all the facts and circumstances alleged show that the bank acted in bad faith or knowingly aided Hawkins in the misapplication of the funds described in the petition. If yes, a cause of action was alleged. If no, the court's action in sustaining the general demurrer was correct. The solution of this question turns, in our opinion, upon the effect to be given to the act of appellee in crediting the personal account of Hawkins with the proceeds of the aforesaid bills of exchange, which it knew was not his property, and thereafter honoring his personal checks for the proceeds of same. By the overwhelming weight of authority it is established that such facts, standing alone, neither constitute the bank a participant in the wrongful conversion by the depositor of such funds nor notice of an intended misappropriation thereof by him. See extensive notes to Empire Trust Co. v. Cahan, 57 A. L. R. page 925 and 64 A. L. R. page 1406.

The general principles of law which, in our opinion, control the disposition of the question under discussion have been so clearly stated in the case of Bischoff v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, 760, L. R. A. 1916F, 1059, that we here copiously quote from it:

"The transfer of the funds of the estate to and the crediting of them by the defendant to Poggenburg, in his individual account, did not overpass the legal right of the executor or the defendant. The method was unwise and hazardous; it did not, however, in and of itself, constitute a conversion. * * *

"A fiduciary may legally deposit the trust funds in a bank to his individual account and credit. Knowledge on the part of the bank of the nature of the funds received and credited does not affect the character of the act. The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust. There are judicial decisions, in cases in which the fiduciary has converted the funds, which hold the contrary. United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn. 720, 157 S. W. 414; Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934. The rule stated by us is, however, established in this and other jurisdictions, as the decisions hereinafter cited will disclose, and accords with reason.

"The acts of the executor and the defendant in depositing and crediting in the individual account of Poggenburg the proceeds

of the checks did not affect the character of the trust funds. The form of each check, in which the defendant was payee, imported the ownership of the moneys represented in them by the executor, and informed the defendant that Poggenburg was depositing with it moneys which were not his and were the executor's. Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585; Cohnfeld v. Tanenbaum, 176 N. Y. 126, 98 Am. St. Rep. 653, 68 N. E. 141. The defendant knew at all times that the credits created by the deposits of those moneys, through the checks of the executor, were equitably assets of the estate and owned by the executor. Trust funds do not lose their character as such by being deposited in a bank for the individual credit and account of the person who is trustee. It may be stated as a general principle that if money deposited in a bank was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his individual bank account. Van Alen v. American Nat. Bank, 52 N. Y. 1; Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 34 L. Ed. 724, 11 S. Ct. 118; Central Nat. Bank v. Connecticut Mut. L. Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Roca v. Byrne, 145 N. Y. 182, 45 Am. St. Rep. 599, 39 N. E. 812.

"Inasmuch as the defendant knew that the credits to Poggenburg created by the proceeds of the checks were of a fiduciary character and were equitably owned by the executor, it had not the right to participate in a diversion of them from the estate or the proper purposes under the will. Its participation in a diversion of them would result from either (a) acquiring an advantage or benefit directly through or from the diversion, or (b) joining in a diversion, in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it. Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585; Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; Union Stock Yards Nat. Bank v. Gillespie, 137 U. S. 411, 34 L. Ed. 724, 11 S. Ct. 118; Central Nat. Bank v. Connecticut Mut. L. Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Allen v. Puritan Trust Co., 211 Mass. 409, 422 (L. R. A. 1915C, 518), 97 N. E. 916, 919. * * *

"A bank does not become privy to a misappropriation by merely paying or honoring the checks of a depositor drawn upon his individual account in which there are, in the knowledge of the bank, credits created by deposits of trust funds. The law does not require the bank, under such facts, to assume the hazard of correctly reading in each check the purpose of the drawer, or, being ignorant of the purpose, to dishonor the check. The presumption is, and after the deposits are made remains until annulled by adequate notice or knowledge, that the depositor would preserve or lawfully apply the trust funds. The contract, arising by implication of law, from a general deposit of moneys in a bank is, that the bank will, whenever required, pay the moneys in such sums and to such persons as the depositor shall direct and designate. Although the depositor is drawing checks which the bank may surmise or suspect are for his personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn."

Justice Cardozo, now a United States Supreme Court Justice, participated in this decision. Justice Holmes wrote the opinion in the Empire Trust Co. v. Cahan Case, 274 U. S. 473, 47 S. Ct. 661, 662, 71 L. Ed. 1158, 57 A. L. R. 921, cited supra.

In this last mentioned case the following significant language appears:

"In the case of checks drawn by a corporation not likely to disburse except for corporate purposes there might be stronger reasons for requiring a bank to be on its guard if an officer having power to draw them deposited checks for considerable sums to his private account; but it recently has been held otherwise by the Judicial Committee of the Privy Council. Corporation Agencies v. Home Bank (1927) A. C. 318. * * * The notice to the bank was notice only of this relation of the parties. The petitioner in permitting the son to draw out the money was permitting only what it, like the respondent's banks, would have been bound to allow even if the deposit had been earmarked as a trust. * * * But we do not place our decision upon that narrow ground. For in addition to what we have said, the transactions went on for over two years and the petitioner fairly might expect the respondent to find it out in a month or two if anything was wrong. Careful people generally look over their bank accounts rather frequently."

In this case the United States Supreme Court appears to place its holding of nonliability of the bank making deposits of the principal's money to the credit of the agent and honoring checks thereon, on the additional broad ground that such transactions went on over a period of two years without any complaint from the principal. The petition on its face in the instant case shows that the acts committed by appellant's treasurer continued for a period of over six years and no complaint is alleged to have been made to the bank by appellant. It also shows that the fiduciary committing the wrongful acts was the creature of the appellant and not of appellee; that the railway company, not the bank, armed him with the power and furnished him with the opportunity to commit the embezzlements in question. It seems

reasonable to conclude that appellee had the legal right to rely on the seeming acquiescence of appellant in the acts of its agent and to assume that the money being checked out by him was for the benefit of his principal. This conclusion, moreover, is in accord with the wholesome presumption that men are honest, not that they are embezzlers. The credit structure of the world is built upon faith in the honesty of mankind. Upon no other hypothesis could banks, under the present system, maintain relations with each other and with their depositors. They are the guardians of deposits, but not of depositors. To require a bank to question the integrity of its customer who draws out personally under the circumstances alleged here, the funds of his principal, would be to exact a requirement that would entangle it in the affairs of a principal, with whom no express contractual relations existed, and against its trusted agent. Such a holding would, in a measure, substitute the rule of suspicion for the long-established and salutary presumption of honesty. It would shoe the feet of commerce with leaden weights of distrust and inject into its lifeblood a virus that would destroy it. Nor do we believe that either precedents or correct legal reasoning require such a holding by us.

The cases of Duckett v. National Mechanics' Bank of Baltimore, 86 Md. 400, 38 A. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513, and of United States Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667, are cited and appear to be chiefly relied on by appellant. Their facts clearly distinguish them from this case. In the first of these the bank violated express instructions as to handling the deposit in question, and in the second the deposit was appropriated by the bank to pay the personal debt of the fiduciary.

The appellee was compelled to pay to Hawkins the cash on the ·bills of exchange when collected if he had demanded it. We are not able to follow the reasoning of some of the courts that make an apparent distinction between the payment of cash and entering a personal credit on its books to the fiduciary. The case of United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn. 720, 157 S. W. 414 (a Tennessee case) is cited by appellant as sustaining its view. This· case is referred to and its conclusions rejected in the Bischoff Case, supra. Most of the cases cited by appellant are either distinguished or their reasoning entirely rejected in some of the cases that we cite in this opinion as sustaining the appellee's view.

Those which directly sustain the contention of appellant, and there are a few of them, are not, in our opinion, sound. That the deposit of trust funds by a fiduciary to his personal account, along with other circumstances, may be sufficient to charge the depository bank with notice of a misappropriation, is clearly settled. In our opinion the only circumstance alleged of any probative force against the bank here is the one of deposit and withdrawal already discussed. That this alone, without other circumstances, would not constitute notice of an intended embezzlement, is, we think, settled by numerous authorities with whose reasoning we entirely agree. Wheeler Motor Sales Co. v. Guerguin (Tex. Civ. App.) 16 S.W.(2d) 309; U. S. F. & G. Co. v. First Nat. Bank, 18 Cal. App. 437, 123 P. 352, 353; City of Helena v. First Nat. Bank (Ark.) 292 S. W. 140; Bank of Vass v. Arkenburgh et al. (C. C. A.) 55 F.(2d) 130, 131; Whiting v. Hudson Trust Co., 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470; Manufacturers' Trust Co. v. U. S. Mort. & Trust Co., 122 Misc. 726, 204 N. Y. S. 105, affirmed 213 App. Div. 345, 210 N. Y. S. 613; 26 R. C. L. 1316 and authorities supra.

It is ably argued by appellant that by virtue of the terms of article 5935, §§ 55 and 59, R. S., the burden of proof shifted to appellee to prove that it acquired title as a holder in due course, upon allegation and proof by appellant that Hawkins negotiated the bills of exchange in breach of faith and fraudulently and that allegations of such facts could not be met by a general demurrer. The statute referred to is a part of our Negotiable Instruments Law and is not essentially different from the rule obtaining prior to its enactment. We are unable to agree with distinguished counsel that such statute announces a rule that will control the disposition of this question, for if appellant had proven every fact and circumstance alleged, it would have by such evidence sufficiently established that appellee was a holder in due course. In fact, what has already been said seems to answer this contention. Appellant's agent and depository had issued to Hawkins the bills of exchange, who, himself, had been clothed with the apparent, if not the actual, authority to deposit these. The petition on its face shows that appellee took these for collection and collected them without any· notice of any fraudulent purpose by Hawkins other than what might be visited upon it by the manner in which he handled the transaction. This alone is not notice. Authorities supra.

The judgment is affirmed.