In the Matter of WHOLESALE FURNI-TURE MART, INC., Debtor.

Leo HILL, Petitioner,

v.

I. I. OZAR, Trustee in Bankruptcy, Respondent and Third-Party Petitioner,

v.

Richard GRAY and Pamela Gray, Third-Party Respondents.

Bankruptcy No. 80–01035–3.
Adv. No. 82–0629–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Sept. 22, 1982.

James R. Schurman, Kansas City, Mo., for I.I. Ozar.

Stephen B. Strayer, Kansas City, Mo., for Richard Gray.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT FOR PLAINTIFFS AGAINST THE DEBTOR CORPORATION AND RESPONDENTS GRAY IN VARIOUS SUMS

DENNIS J. STEWART, Bankruptcy Judge.

■ This is an action initiated by a customer of the debtor corporation who, as of the time of the conversion of these former chapter 11 proceedings to chapter 7 proceedings, had paid all or part of the price of certain merchandise but never received that merchandise. The court of bankruptcy has treated the action thus initiated as a class action in favor of all customers who had paid the chapter 11 debtor for merchandise which they did not receive.[1]

1. The defendants Richard and Pamela Gray have objected to the institution of this action by means of a show cause order rather than by means of the process described in Rule 704 of the Rules of Bankruptcy Procedure. But it has long been recognized in the bankruptcy context that show cause orders are sufficient substitutes for process, conferring all the notice which is necessary. "(A)n order to show cause (is) ... in the nature of process." 2 Collier on Bankruptcy para. 24.39(1), p. 796 (1976). In actions which are brought to gain judgment for money or property against a debtor or an officer or director of a debtor corporation, it has been held that "(t)he referee may make the essential investigation ... and for such purpose may cite the claimant to show cause." 2 Collier on Bankruptcy para. 23.07, p. 524 (1976).

The court also finds that the prerequisites for a class action exist in this case as they are set out in Rule 23, F.R.Civ.P. The class representative has filed a complaint for relief and has thereby adequately prosecuted the class action. Although he failed to appear for the subsequent hearings, it was never shown that he was not a proper class representative and maintenance of the class action in his name was therefore proper. See, e.g., *Goodman v. Schlesinger*, 584 F.2d 1325, 1332, 1333 (4th Cir.1978). The only requirement for the class action certification which offers any trouble in this case is numerosity of the class. In this respect, as to the number of claimants which warrant the class certification, "no hard and fast number rule can or should be stated, since 'numerosity' is tied to 'impracticability' of joinder under the specific circumstances." 3B Moore's Federal Practice para. 23.05(1), pp. 23–150, 23–151 (1982). In this case, the impracticability of joinder, when the members of the class are all claimants of relatively small sums which, if sought individually, would likely be consumed by the costs of litigation, is the crucial issue requiring class certification in this case. Further, since this action is basically one affecting the dischargeability of an indebtedness, it is basically one in equity and the judgment is in the form of one *declaring* the indebtedness to be nondischargeable in bankruptcy. Therefore, the class may be, and is hereby, certified under the provisions of Rule 23(b)(2), F.R.Civ.P., as one in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final ... declaratory relief with respect to the class as a whole." In ruling on the dischargeability of the judgment with respect to the corporation, the court also has jurisdiction to rule on the liability and, therefore, on the joint and several liability of the co-defendants before the court as a matter ancillary to the dischargeability determination. See sections 1471(b), (c), Title 28, United States Code. Both Richard and Pamela Gray are before the

The hearings and inquiries which have accordingly been conducted by the court to determine (1) the membership of the plaintiff class and the amount each has paid for merchandise which he or she has not received and (2) the disposition of these monies.

It has been the contention of the trustee in bankruptcy throughout these proceedings (1) that the class action is improper and (2) that, even if monies paid by members of the plaintiff class can in fact be traced into the bankruptcy estate, the class members must nevertheless be relegated to status of general unsecured claimants.[2]

The court, nevertheless, in the exercise of its duty and power to ensure that a class action is properly prosecuted, even in the temporary absence of a proper class representative,[3] has made successive efforts to ascertain the composition of the class and to trace the monies which they paid for merchandise which they did not receive into the estate or elsewhere. To this end, the court has set successive hearings, but has been frustrated at several junctures in the proceeding, first by the withdrawal of counsel for the defendants Gray and then by the refusal of the defendants Gray to retain any successor counsel.

At last, at the hearing set by the court for June 28, 1982, the defendant Richard Gray appeared before the court without counsel and submitted records which purported to show the list of persons who made payments for merchandise which they did not receive. That list is reproduced in the marginal note.[4] It was his contention that the monies thus paid are shown to be traceable to the same $18,500.00 which were in the debtor corporation's bank account as of the date of the conversion of chapter 11 proceedings to chapter 7 proceedings.

■ A review of the records which were submitted by Mr. Gray only purports to show that the monies collected from the members of the plaintiff class went into the bank account which had the above balance of $18,500.00 in it as of the date of the conversion. But these records hardly purport to show that the monies paid in by the members of the plaintiff class were the same monies as those which remained in the bank account as of the date of conversion. Rather, they only show that those monies went into the bank account; that they were there commingled with other monies; that operating and other expenses were paid out of the bank account, and that, of a much larger total deposited in the bank account over the period of time purporting to be

court by reason of the service of the show cause order upon their counsel, who then represented them both, even though he has since withdrawn as their counsel.

2. There is authority for the position of the trustee in this respect. See 4A Collier on Bankruptcy para. 70.25, pp. 346, 348 (1978), to the following effect: "Money paid to the bankrupt prior to bankruptcy under a mistake of fact is impressed with a constructive trust that follows it into the hands of the bankruptcy trustee ... A trust relationship may also be created by conduct ... One of the more common forms of constructive or involuntary trusts created by conduct is that of the trust *ex maleficio*—that is, created by wrongdoing. Such a trust usually arises out of the conversion of money or property belonging to another. Where the existence of the trust has been established, the bankruptcy trustee will be ordered to turn over the property or proceeds, subject, of course, to the beneficiary's discharging the burden of tracing the trust property." But, as is further noted in the text of this memorandum, the monies paid by the members of the plaintiff

class cannot unfailingly be traced with any certainty into the monies which are currently in the estate. "Where the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's, the owner must definitely trace that which he claims is contained in the assets of the estate. It is not enough to show generally that the property or the money representing sales of the property was added to the debtor's assets at the time of acquisition. The goods sought to be recovered must be definitely traced into the property of the estate, or the proceeds thereof must be traced to a particular fund or to specific property in which it was invested. Upon failure to do this, the bailor, principal, or consignor becomes only a general creditor with the same rights appertaining to other general creditors." 4 Collier on Bankruptcy para. 541.08, p. 541–44 (1982).

3. See note 1, *supra*.

4. See Exhibit "A" attached hereto.

covered by the records, the sum of $18,-500.00 remained in the bank account as of the date of conversion.

These facts compel the court to conclude that the monies paid by the would-be purchasers of merchandise from the debtor cannot be traced into the bankruptcy estate and such tracing is the necessary condition for recovery from the estate. See 4A Collier on Bankruptcy ¶ 70.25, pp. 346, 348 (1978), to the following effect:

> "Money paid to the bankrupt prior to bankruptcy under a mistake of fact is impressed with a constructive trust that follows it into the hands of the bankruptcy trustee ... A trust relationship may also be created by conduct ... One of the more common forms of constructive or involuntary trusts created by conduct is that of the trust *ex maleficio*—that is, created by wrongdoing. Such a trust usually arises out of the conversion of money or property belonging to another. Where the existence of the trustee will be ordered to turn over the property or proceeds, *subject, of course, to the beneficiary's discharging the burden of tracing the trust property.*" (Emphasis added.)

Accordingly, the plaintiffs cannot recover from the bankruptcy estate.[5]

▉ Rather, the right of the plaintiffs to recover exists directly against the defendants Gray. The monies paid to the debtor corporation by the would-be purchaser of merchandise was paid subject to return in the event the merchandise were not delivered. As such, it constituted a special fund which should not have been commingled with the other monies of the debtor corporation before the delivery of the merchandise.[6] Under the governing authorities, such commingling constituted con-

version of the money of the plaintiffs.[7] Even though the money was converted to the use and benefit of the debtor corporation, the managing officers and agents of the corporation, the Grays, who effected the conversion, are jointly and severally liable to the plaintiffs for the conversion. See *Matter of Transport Clearings-Midwest, Inc.,* 16 B.R. 890, 895, 896 (Bkrtcy.W.D.Mo. 1979), to the following effect:

> " 'By the great weight of authority it is recognized that officers of a corporation are personally liable, or are jointly liable with the corporation, to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation—the theory being that an agent cannot escape the consequences of his tort by the fact that he committed the tort as agent for his principal.' Anno., Personal Liability of Corporate Directors or Officers to Third Persons for Restitution, or for Damages for Conversion, Under Circumstances Rendering the Corporation Itself Liable, 152 A.L.R. 696, 705 (1944).
>
> " 'Of course, defendant's liability did not depend upon his having derived any personal benefit from the alleged conversion.' *Darling & Co., v. Fry, supra,* [24 S.W.2d] at 724. A corporate officer was held liable for conversion of the plaintiff's money to pay other corporate debts for which the officer bore no personal liability in *Patrons Bank & Trust Co., v. Shapiro,* 215 Kan. 856, 528 P.2d 1198 (1974). 'The debt ... would seem to have been created by his appropriation or defalcations while acting as an officer of the bankrupt corporation ... whether or

---

5. See also 4 Collier on Bankruptcy para. 541.-08, p. 541–44 (1982), the relevant substance of which is quoted in marginal note 2, *supra.*

6. The money which was paid to the corporation and the defendants Gray by the would-be purchasers could not become the property of the corporation until delivery of the furniture. It was only on deposit with them as bailees of the money. See, e.g., *Breece v. Jett,* 556 S.W.2d 696 (Mo.App.1977), to the effect that money

can constitute a subject of conversion if it is money in a special fund designated for a special purpose.

7. "The act of wrongfully mixing the property of one person with that of another so that the property cannot be identified is an act of conversion, especially where coupled with the defendant's use of the mixed property ..." 18 Am.Jur.2d *Conversion* para. 51, p. 189 (1965).

not he profited personally by the transaction.' *Kaufman v. Lederfine,* 49 F.Supp. 144, 145 (S.D.N.Y.1943)."

In this case, it was the defendants Gray who determined during the relevant time periods how the monies in the custody of the corporation should be handled and disposed of. Consequently, they participated in the tort of conversion and are therefore liable to the plaintiffs for the value converted.[8]

The court in this action has not been able to conduct a hearing to determine whether the conversion was wilful and malicious within the meaning of § 523(a)(2) of the Bankruptcy Code. Further, that issue has not been relevant to the action at bar because the defendants Gray are not themselves debtors in title 11 proceedings. If it becomes relevant, a hearing on the issue may be conducted at a later time and a judgment on any future issue of dischargeability rendered.

It is therefore, for the foregoing reasons,

ADJUDGED that the plaintiff's claims for reclamation of any monies or property directly from the estate in bankruptcy be, and they are hereby, denied. It is further

ADJUDGED that the plaintiff class members, and each of them, have and recover from the respondent debtor corporation and from Thomas Gray and Pamela Gray, jointly and severally, the sums set out in the marginal note,[9] and that, with respect to the debtor corporation, the indebtedness be, and it is hereby, declared to be nondischargeable in bankruptcy.[10]

### EXHIBIT "A"

#### PRIOR TO CHAPTER 11 PETITION DEPOSITS

| | | |
|---|---|---|
| Amy Armstrong<br>500 E. 3rd St., Apt. 9<br>Lee's Summit, Mo. 64063 | Claim incurred<br>March 23, 1980 | $222.40 |
| W. H. Benton<br>11308 E. 44th St.<br>Kansas City, Mo. 64133 | Claim incurred<br>March 7, 1980 | 412.00 |
| Terry Lee Boone<br>1508 E. 43rd St.<br>Indep., Mo. 64055 | Claim incurred<br>March 2, 1980 | 418.56 |
| Troy Brantley<br>24401 W. 86th Terr.<br>Olathe, Ks. 66061 | Claim incurred<br>March 26, 1980 | -0- |
| Anthony Brzezinski<br>2404 W. 38th Ave.<br>Kansas City, Ks. 66103 | Claim incurred<br>September 6, 1979 | 792.00 |
| Faye and Nick Cavlovich<br>9132 E. 43rd Terr.<br>Kansas City, Mo. 64133 | Claim incurred<br>January 28, 1980 | 256.68 |
| Bob DeMay<br>3901 Queen Ridge<br>Indep., Mo. 64055 | Claim incurred<br>February 22, 1980 | -0- |
| W. E. Dummit<br>Route 1, Box 275<br>Gardner, Ks. 66030 | Claim incurred<br>December 10, 1979 | 568.63 |
| David Etter<br>16005 W. 154th St.<br>Olathe, Ks. 66061 | Claim incurred<br>December 14, 1979 | -0- |
| Kyle and Brenda Fitzgerald<br>8917 W. 101st St.<br>Overland Park, Ks. 66212 | Claim incurred<br>January 18, 1980 | 422.83 |
| Judy Galate<br>509 Myrtle<br>Kansas City, Mo. 64124 | Claim incurred<br>March 13, 1980 | 500.00 |
| Patricia C. Hanks<br>10812 W. 56th Terr.<br>Shawnee Mission, Ks. 66203 | Claim incurred<br>October 30, 1979 | 200.00 |
| Omar Hazley<br>8600 E. 50th Terr.<br>Kansas City, Mo. 64129 | Claim incurred<br>January 10, 1980 | 300.00 |
| John Heath<br>9409 E. 84th St.<br>Raytown, Mo. 64138 | Claim incurred<br>February 17, 1979 | 501.72 |
| Patricia Henderson<br>7820 Grant, #14<br>Overland Park, Ks. 66201 | Claim incurred<br>March 30, 1980 | 100.00 |
| Thomas J. Houston<br>1902 Peach<br>Higginsville, Mo. 64037 | Claim incurred<br>October 21, 1979 | 848.65 |
| Kansas City Foreign Car<br>Parts & Salvage<br>1301 N. Century Dr.<br>Kansas City, Mo. 64120 | Claim incurred<br>February 28, 1980 | 900.00 |
| Joseph Martinez<br>2112 Taylor Dr.<br>Olathe, Ks. 66062 | Claim incurred<br>May 1, 1980 | 54.75 |
| Gayle Newman<br>12613 W. 104th Terr.<br>Olathe Park, Ks. | Claim incurred<br>December 18, 1979 | 219.75 |
| Susan Prather<br>13401 Winchester<br>Grandview, Mo. 64030 | Claim incurred<br>February 2, 1980 | 367.24 |

**8.** The measure of damages is the amount of money converted. Further, in order to give the injured party full indemnity, interest may be allowed from the date of conversion. *Independence Flying Service, Inc. v. Ailshire,* 409 S.W.2d 628 (Mo.1966).

**9.** Plus interest at the legal rate from the respective dates on which the claims were incurred. See Exhibit "A" attached.

**10.** See section 727 of the Bankruptcy Code generally denying discharges to corporate debtors.

EXHIBIT "A"

PRIOR TO CHAPTER 11 PETITION DEPOSITS

Robert L. Smith
5103 Long Dr.
Shawnee, Ks. 66216
Claim incurred January 4, 1979 — 33.76

Jesse T. or Anita Stenner
Route 1, Box 169
Kearney, Mo. 64060
Claim incurred December 7, 1979 — 226.27

William R. and Kathleen Venable
3941 W. 98th St.
Overland Park, Ks. 66207
Claim incurred January 12, 1980 — 65.00

Nancy C. Victor
7013 Gillette
Shawnee Mission, Ks. 66212
Claim incurred January 30, 1980 — 206.99

Alan W. Viebrock
4815 W. 55th
Roeland Park, Ks. 66205
Claim incurred March 21, 1980 — 206.56

C. R. Warren
16601 Lamar
Stilwell, Ks. 66085
Claim incurred February 17, 1980 — 114.96

AFTER CHAPTER 11 PETITION DEPOSITS

Steve Able
7708 W. 60th Terr.
Overland Park, Ks. 66202
Claim incurred August 1, 1980 — $186.15

G. R. Allan
9510 Halsey, Apt. 204
Lenexa, Ks. 66215
Claim incurred May 5, 1980 — 100.00

Robert Baker
5225 Brookwood
Kansas City, Mo. 64130
Claim incurred August 1, 1980 — 100.00

H. Bass
Box 224
Mayview, Mo. 64071
Claim incurred September 27, 1980 — 400.00

H. Berry
5607 Garfield
Kansas City, Mo. 64130
Claim incurred September 21, 1980 — 120.00

Roger Betts
6018 E. 127th
Grandview, Mo. 64030
Claim incurred June 3, 1980 — 280.00

Susan L. Brown
6624 Grand
Kansas City, Mo. 64113
Claim incurred August 29, 1980

Sylvester Brown
7350 State
Kansas City, Ks. 66112
Claim incurred July 19, 1980 — 35.00

Mark Carter
6112 E. 126th St.
Grandview, Mo. 64030
Claim incurred June 20, 1980 — 46.00

Charles W. Coffman
4800 W. 64th St.
Prairie Village, Ks. 66208
Claim incurred September 1, 1980 — 202.00

Mike N. Connors
10506 W. 73rd
Shawnee Mission, Ks. 66203
Claim incurred November 6, 1980 — 122.00

David Deutscher
12122 W. 97th St.
Lenexa, Ks. 66215
Claim incurred May 17, 1980 — 102.00

Ben Douglas
5314 N. Lydia
Kansas City, Mo. 64118
Claim incurred August 10, 1980 — 200.00

Lillian Frankenfield
508 S. Hospital Dr.
Paola, Ks. 66071
Claim incurred November 22, 1980 — 55.92

Lillian Frankenfield
508 S. Hospital Dr.
Paola, Ks. 66071
Claim incurred November 22, 1980 — 19.76

Dee Dee Glover
1009 A. Dennis Ct.
Olathe, Ks. 66061
Claim incurred January 2, 1980 — 20.00

W. Harries
6563 W. 49th
Mission, Ks. 66202
Claim incurred September 11, 1980 — 200.00

Bill Helms
3107 N.E. 65th Terr.
Gladstone, Mo. 64119
Claim incurred November 8, 1980 — 616.00

Bill Helms
3107 N.E. 65th Terr.
Gladstone, Mo. 64119
Claim incurred December 6, 1980 — 156.00

Eagle Enterprises (Leo Hill)
5311 Hardey
Raytown, Mo. 64133
Claim incurred July 12, 1980 — 100.00

Lunnell Hollinshed
1908 Washington Ave.
Kansas City, Ks. 66102
Claim incurred August 6, 1980 — 104.16

Greg Joens
4030 W. 98th Terr.
Overland Park, Ks. 66207
Claim incurred October 26, 1980 — 325.00

Steve Joens
4030 W. 98th Terr.
Overland Park, Ks. 66207
Claim incurred October 24, 1980 — 200.00

Jackie Johnson
9244 Wedd
Overland Park, Ks. 66212
Claim incurred February 19, 1981 — 161.04

Raymond J. Kerrin
1113 Palmer Circle
Olathe, Ks. 66061
Claim incurred September 21, 1980 — 150.00

D. Knudson
441 N. 83rd Terr.
Kansas City, Ks. 66112
Claim incurred September 5, 1980 — 382.00

Marquita Lee
8540 Walmer
Overland Park, Ks. 66212
Claim incurred January 16, 1981 — 300.00

Jack Lewis
2959 Jackson
Kansas City, Mo. 64128
Claim incurred October 6, 1980 — 125.00

Albert J. Lowe, III
5121 Oakleaf Dr.
Kansas City, Mo. 64129
Claim incurred August 13, 1980 — 600.20

Albert J. Lowe, III
5121 Oakleaf Dr.
Kansas City, Mo. 64129
Claim incurred August 13, 1980

Virginia McGrew
R.R. 3, 259C
Leavenworth, Ks. 66048
Claim incurred June 10, 1980 — 150.00

Stephen McGuckin
1118 Penntower
3100 Broadway
Kansas City, Mo. 64111
Claim incurred September 30, 1980 — 80.00

Phyllis J. Mejia
966 S. 65th St.
Kansas City, Ks. 66111
Claim incurred September 19, 1980 — 60.00

Louise Mimms
9901 Rosehill Rd.
Lenexa, Ks. 66215
Claim incurred June 1, 1980 — 100.00

EXHIBIT "A"

AFTER CHAPTER 11 PETITION DEPOSITS

| | | |
|---|---|---|
| Louise Mimms<br>9901 Rosehill Rd.<br>Lenexa, Ks. 66215 | Claim incurred<br>June 1, 1980 | 10.00 |
| Cheryle Mitchell<br>8258 Monroe Dr. Apt. A<br>Kansas City, Ks. 66112 | Claim incurred<br>October 23, 1980 | 25.00 |
| Harold Monlowe<br>7119 Myrtle<br>Kansas City, Mo. 64132 | Claim incurred<br>August 13, 1980 | 50.00 |
| Walter Randolph<br>8800 Bristol<br>Kansas City, Mo. 64138 | Claim incurred<br>June 23, 1980 | 100.00 |
| Bobby Richardson<br>Sue Blackburn<br>8816 Flora<br>Kansas City, Mo. 64131 | Claim incurred<br>December 1, 1980 | 200.00 |
| D. Reed<br>7218 E. 87th Terr., Apt. 302<br>Kansas City, Mo. 64138 | Claim incurred<br>September 14, 1980 | 50.00 |
| Mary Reed<br>13917 Summertree<br>Olathe, Ks. 66061 | Claim incurred<br>August 30, 1980 | 30.56 |
| Michael Rodman<br>Box 354<br>LaCygne, Ks. 66040 | Claim incurred<br>October 26, 1980 | 150.00 |
| T. Smith<br>Route 2, South Madison<br>Raymore, Mo. 64083 | Claim incurred<br>September 18, 1980 | 203.76 |
| Gary Stamps<br>5629 E. 40th<br>Kansas City, Mo. 64130 | Claim incurred<br>July 7, 1980 | 100.00 |
| Shirley Standrys<br>7508 W. 63rd St.<br>Overland Park, Ks. 66202 | Claim incurred<br>June 16, 1980 | 458.00 |
| Richard Stroud<br>619 E. 3rd St.<br>Garnett, Ks. 66032 | Claim incurred<br>November 17, 1980 | 276.00 |
| Greg Taylor<br>4425 Lane<br>Olathe, Ks. 66061 | Claim incurred<br>January 16, 1981 | 250.00 |
| Dee Vincent<br>6925 Cener<br>Shawnee, Ks. 66216 | Claim incurred<br>August 19, 1980 | 50.00 |
| Bobbie R. Watts<br>7200 Norton<br>Kansas City, Mo. 64132 | Claim incurred<br>June 11, 1980 | 50.00 |
| Larry Wise<br>9220 Rose Hill, Apt. 7<br>Lenexa, Ks. 66215 | Claim incurred<br>August 1, 1980 | 350.00 |