In re **GOLDBLATT BROS.,**
**INC., Debtor.**

The **FIRESTONE TIRE & RUBBER**
**COMPANY, Plaintiff,**

v.

**GOLDBLATT BROS., INC., Defendant.**

**Bankruptcy No. 81 B 7075.**
**Adv. No. 81 A 2114.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 23, 1986.

As Corrected June 3, 1986.

Lawrence P. Bemis, Susan J. McDunn, Kirkland & Ellis, Chicago, Ill., for plaintiff.

John W. Costello, Jeffrey R. Liebman, Francesca J. Robertson, Arvey, Hodes, Costello & Burman, Chicago, Ill., for debtor-defendant.

## MEMORANDUM OPINION AND ORDER AS TO COUNT I

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Firestone Tire & Rubber Company ("Firestone") sued debtor/defendant Goldblatt Bros., Inc. ("Goldblatt") in five counts for failure to remit Firestone's funds held by Goldblatt on the date of its bankruptcy filing:

Count I—Implied trust

Count II—Fraud and constructive trust

Count III—Agency

Count IV—Breach of fiduciary duty and constructive trust

Count V—Unjust enrichment.

Through a series of rulings described below, the District Court found the liability issue against defendant on Count I. Firestone now seeks entry of final judgment for the principal amount due it plus interest on its money held by Goldblatt in what the District Court found to be an implied trust. The sum thus held on the date of filing of this bankruptcy case was stipulated to be $926,210.95. Pursuant to judgment for liability entered by this Court on Count I in favor of Firestone, all in conformity with the District Court decision, it is now necessary to enter final and appealable judgment on Count I for a definite amount of recovery. Goldblatt objects to the payment of interest in computing that recovery. It contends that the parties agreed the claim would be paid as an administrative expense under § 507(a)(1), so that post-petition interest is not allowed under § 502(b)(2) of the Bankruptcy Code. The parties have stipulated to all pertinent facts involving

Count I and further stipulate that this Court rule on the remaining legal issues and enter final judgment without further evidence. There are no credibility issues and no facts in dispute.

For reasons set forth below, Firestone's prayer for interest is allowed. .Judgment will be entered in favor of Firestone on Count I upon computations to be made pursuant hereto and judgment order to be prepared and tendered in accord herewith. All remaining Counts of the Adversary Complaint were previously adjudicated in favor of Goldblatt, so judgment on Count I will dispose of the case.

### Facts, Pleadings, and Prior Rulings

The facts in Count I of this case are not in dispute and are primarily taken from the Joint Pretrial Statement and stipulations submitted by the parties. Many facts in the pretrial statement were in turn taken from the District Court opinion. *In Re Goldblatt*, 33 B.R. 1011 (N.D.Ill.1983), *appeal dismissed*, 758 F.2d 1248 (7th Cir. 1985). The parties have therefore stipulated to all relevant facts and present only legal issues as to Count I.

The discussion in this section will stand as this Court's Findings of Fact.

Goldblatt and Firestone entered into a License Agreement in 1963 which authorized Firestone to operate tire centers near Goldblatt stores and sell its own tires and other automotive products under Goldblatt's trade name. Firestone operated the outlets as an independent contractor and paid Goldblatt a royalty based on a percentage of the net sales generated by Firestone. The royalty was to be 5% of the net sales if Firestone provided the real estate and building or 10% if the real estate and building were furnished by Goldblatt.

Goldblatt received the royalty by collecting all the cash and credit receipts from the Firestone tire centers at the end of each day. At the end of the month Goldblatt rendered a detailed monthly accounting of the sales from all of the tire centers and subtracted its royalty payments. Gold-

blatt's then remitted 90 or 95% of the net sales back to Firestone within 15 days.

On June 15, 1981, Goldblatt filed a voluntary Chapter 11 petition. At that time, Goldblatt had in its possession $926,210.95 from Firestone's preceding four weeks of sales.

On June 23, 1981, Firestone filed this Adversary Complaint seeking recovery of those moneys. It claimed that Goldblatt had neither legal title nor any equitable interest in the funds and they were not property of Goldblatt's estate. Firestone simultaneously moved for preliminary injunction to enjoin Goldblatt from dissipating, disbursing or using the funds which were the subject of the complaint. With respect to the latter motion, these parties agreed to an order obviously intended to provide interim protection to Firestone in lieu of injunctive relief. That order provided (emphasis supplied):

If Firestone shall prevail upon the complaint to modify automatic stay and to reclaim property filed herein and bearing Adversary No. 81 A 2114, and the court shall determine that Debtor is required to return to Firestone certain funds (or the traceable proceeds thereof) which Firestone, prior to the date Debtor commenced the above-captioned chapter 11 case ("Filing Date"), delivered to Debtor pursuant to the terms of the "License Agreement" (as defined in the complaint), or the court shall determine that, but for the entry of this order, Debtor would have been required to return said funds to Firestone, then *Firestone shall, without further order of the court, have an administrative claim against Debtor and its estate with priority as provided by section 507(a)(1) of the Bankruptcy Code, 11 U.S.C. § 507(a)(1), in an amount which the court determines that Debtor is required to return to Firestone or, but for the entry of this order, would have been required to return to Firestone.*

Debtor is hereby authorized to use, in the ordinary course of its business, the funds delivered by Firestone to Debtor

prior to the Filing Date pursuant to the terms of the License Agreement. *Notwithstanding Debtor's right to use said funds, it is specifically provided that any right Firestone may have to reclaim the funds at issue shall not be prejudiced or lost by reason of any use by Debtor of such funds from and after the Filing Date, including without limitation any commingling and/or disbursement of said funds. The entry of this order shall be without prejudice to any rights Firestone may have, and shall* not relieve Debtor of any obligations imposed by section 365 of the Bankruptcy Code, in the event Debtor assumes the License Agreement pursuant to the provisions of section 365 of the Bankruptcy Code, 11 U.S.C. § 365.

Firestone's Adversary Complaint seeks recovery from Goldblatt of $941,640.22 in Firestone's funds assertedly held in implied or constructive trust. Firestone moved for summary judgment seeking determination that those funds were not property of the bankruptcy estate, and that Firestone therefore was entitled to administrative priority. Firestone did not seek summary judgment as to the amount of the claim. Goldblatt responded with a cross motion for summary judgment to declare that Goldblatt and Firestone had a debtor/creditor relationship, rather than a trust relationship. On January 7, 1983, Judge James granted Goldblatt's motion for summary judgment as to all Counts of the Adversary Complaint.

On appeal to the District Court, Judge Leighton reversed the Bankruptcy Court decision only as to Count I, holding that Goldblatt possessed over $900,000 in an implied trust for Firestone. He found that Goldblatt had without authority commingled the funds from Firestone's tire centers with its own money. Firestone was found to have temporarily placed the tire center proceeds with Goldblatt, and Goldblatt thereupon was found to have held those funds in an implied trust for Firestone. The District Court thereby found Goldblatt liable under Count I, but did not reach the plaintiff's constructive trust or other theo-

ries. *In Re Goldblatt Bros., Inc.,* 33 B.R. 1011, 1014–15 (N.D.Ill.1983), *appeal dismissed,* 758 F.2d 1248 (7th Cir.1985). The case was remanded by the District Court to the Bankruptcy Court for entry of an order granting Firestone's motion for partial summary judgment that the funds were not property of the estate and for further proceedings. Goldblatt appealed that order.

On April 5, 1985, the Seventh Circuit dismissed that appeal for lack of jurisdiction. Because neither the Bankruptcy Court nor Judge Leighton had adjudicated the exact amount of money held by Goldblatt in an implied trust no final judgment was rendered in Count I; therefore the District Court order was neither final or appealable. *In Re Goldblatt Bros., Inc.,* 758 F.2d 1248 (7th Cir.1985).

The net effect of the foregoing events was to leave Goldblatt the victor on Counts II through IV because of Judge James' earlier ruling, but such judgment was not yet appealable until Count I would be disposed of.

After remand, on June 28, 1985, this Court entered an order of partial summary judgment as to liability on Count I in conformity with the District Court ruling:

> The Firestone Tire & Rubber Company's Motion for Partial Summary Judgment is granted, and accordingly The Firestone Tire & Rubber Company does have and recover judgment that it has an administrative claim to and upon funds held by debtor, with priority as provided by Section 507(a)(1) of the Bankruptcy Code, Title 11 U.S.C. § 507(a)(1), that the tire center proceeds are held by Goldblatt in an implied trust for Firestone, all subject to further proceedings to determine the amount thereof; and

> Goldblatt Bros., Inc.'s Cross-Motion for Summary Judgment is denied.

The wording of that order was agreed to by the parties, and was intended by them and by the Court to preserve for ruling at this time the issues decided herein.

This Court also ordered the parties to file a Joint Pretrial Statement together with authority related to the remaining issues: the exact amount of money Goldblatt was holding for Firestone; whether Firestone was entitled to interest on that money and, if so, in what amount. Firestone and Goldblatt have since stipulated that on June 15, 1981, when Goldblatt filed for bankruptcy, Goldblatt was holding $926,210.95 for Firestone. The parties stipulated to other facts and documents related to possible alternative applicable interest rates should this Court find interest due, though Goldblatt argues that no interest at all is due.

## DISCUSSION

This Court now rules that Goldblatt must pay interest on the $926,210.95 it held in implied trust for Firestone from the date of filing bankruptcy on June 15, 1981, based on the Illinois statutory pre-judgment rate compounded annually until the moneys were invested on December 6, 1983; and for the period after that date until the date of judgment herein must pay the average of interest rates actually earned on moneys invested by Goldblatt during that period, compounded quarterly. The discussion that follows will constitute this Court's Conclusions of Law.

1. *Payment as "Administrative Claim" does not here bar interest.*

Goldblatt argues that the parties agreed June 21, 1981, and the Bankruptcy Court ordered, that the funds were to be treated in all ways as an administrative claim under § 507(a)(1) of the Bankruptcy Code. If so, the distribution of the funds would be subject to Bankruptcy Code § 503(b)(1) which prohibits post-petition interest payments on an administrative expense. *In Re Brooks & Woodington, Inc.*, 505 F.2d 794, 799 (7th Cir.1974); *See also In Re Stack Steel & Supply Company*, 28 B.R. 151, 156 (Bankr.W.D.Wash.1983).

1. The district court order specifically stated that:
> Section 541 of the Bankruptcy Code ... provides that the estate of a bankrupt consists of all its legal or equitable interests in property at the time the bankruptcy action commences.

Goldblatt further argues that the allowance of post-petition interest here would be unfair to the 3,000 other Goldblatt's creditors who may not be able to recover the full amount of their claims, let alone post-petition interest. Firestone counters that it would be inequitable to subordinate the interest moneys due Firestone to the claims of unsecured creditors. It asserts that Goldblatt's estate should not benefit from interest earned on Firestone's money for almost five years.

Goldblatt correctly points out that the theory behind the usual denial of post-petition interest is to require all creditors to share equally the burden of delayed payment in Bankruptcy. *See Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163–64, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); 3 Collier on Bankruptcy, ¶ 502.02 at 502–30 (15th ed. 1985). Goldblatt asserts that any inconvenience or harm suffered by Firestone because of delay by Firestone was not more than that suffered by other creditors of Goldblatt's estate.

Goldblatt's argument in that regard fails because of the District Court's decision. The District Court found that Goldblatt held the funds in an implied trust, and that these funds were never part of the Goldblatt estate.[1] Therefore Firestone is not a mere creditor in this dispute. Because the Bankruptcy Code only governs distribution of property of the estate, not that outside of the estate, the statutory prohibition of post-petition interest on administrative claims is not applicable. Firestone is not a creditor against estate assets but merely wants its own money plus interest due on that money under alternative theories of liability and computation.

Since the trust funds are not property of the estate, questions as to whether

> Therefore, property held by a bankrupt in trust for another, where the bankrupt has no cognizable legal or equitable interest in such property, is not part of the bankruptcy estate. *In Re Goldblatt Bros.*, 33 B.R. at 1013.

Firestone is entitled to interest on those funds, and if so at what rate, are issues to be determined by trust law. *See e.g., In Re N.S. Garrott & Sons,* 772 F.2d 462 (8th Cir.1985). In *Garrott,* although the facts there are distinguishable from this case, the Court of Appeals did hold to the general rule that a Bankruptcy Court is bound to recognize the equitable interest of others in property held by the debtor in trust for those parties. Only excess sums in such a trust would be considered property of the estate. *Id.* at 467.

■ Contrary to Goldblatt's argument, the Agreed Order entered into by the parties on June 23, 1981, did not simply require the funds to be treated as a § 507(a)(1) administrative expense. That Order established the *priority* of Firestone's claim by stating "Firestone shall ... have an administrative claim against Debtor and its estate *with priority* as provided by Section 507(a)(1) of the Bankruptcy Code...." (emphasis added). But in language that Goldblatt's briefs do not even seek to explain, that Order specified that the *amount* of the claim would be "in an *amount* equal to the amount which the court determines that Debtor is required to return to Firestone or, but for the entry of this order, would have been required to return to Firestone." (emphasis added). The Order thereby stated the agreed priority by which the funds were to be paid, but preserved Firestone's claim for interest to which it might be entitled. Read together, the two clauses say that Firestone is to have administrative priority for whatever sum is due it. That Agreed Order was in compromise of Firestone's earlier motion for injunction which would have segregated, frozen, and required the return of the million dollars due it. Goldblatt traded off the threat of lost use of the fund against the Order, retained use and investment of the million dollars for many years, and now seeks to return only the principal sum with no time value cost for its use and investment of the fund over the five years since entry of the Agreed Order.

Consequently the Order entered by this Court on June 28, 1985, in conformity with the District Court ruling also provided that Firestone "has an administrative claim to and upon funds held by debtor, *with priority* as provided by Section 507(a)(1) of the Bankruptcy Code...." (emphasis added). The latter Order clearly stated that the payment of funds to Firestone is to be treated with the priority provided § 507(a)(1) claims. However, that Order did not in any way bar the payment of interest in determining the total *amount* to be treated with priority as an administrative claim.

2. *Determination of appropriate interest rates.*

(a) *Introduction.*

Under Illinois law, a trustee is obligated to turn over any profits made on trust funds to the beneficiary. *In Re Estate of Swiecicki,* 121 Ill.App.3d 705, 707, 77 Ill. Dec. 232, 460 N.E.2d 91 (5th Dist.1984), *aff'd,* 106 Ill.2d 111, 87 Ill.Dec. 511, 477 N.E.2d 488 (1985). When there has been a breach of trust, the trustee is liable for profits which were made or should have been made. G. Bogert and G. Bogert, *The Law of Trusts and Trustees,* § 863 (2d ed. 1962). Goldblatt breached the fiduciary duty it had to Firestone by commingling the funds in question with other funds. *In Re Goldblatt Bros.,* 33 B.R. at 1014. Even if a trustee has not committed a breach of trust, he is generally liable for any interest which he received from the trust funds. A. Scott, *The Law of Trusts,* § 203 at 1677 (3d ed. 1967).

The court has broad discretion to decide what rate of interest applies and during what time period. *Jefferson National Bank v. Central National Bank in Chicago,* 700 F.2d 1143, 1154 (7th Cir.1983) (prejudgment interest at prime rate allowed on promissory note when beneficiary receives judgment against trustee). The most accurate measure of the interest to be charged is the amount actually earned on the funds. G. Bogert, § 863 at 30. However, Goldblatt did not segregate the disputed funds as it should have, but rather commingled

them with its own funds. *In Re Goldblatt Bros.,* 33 B.R. at 1014. Therefore, the amount of interest actually earned cannot be precisely ascertained.

**(b)** *Interest should not be computed at the post-judgment legal rate.*

Firestone argues (as one alternative for computation) that when interest is paid upon distribution of the property of the estate, interest is paid at the legal rate. 11 U.S.C. § 726(a)(5). Firestone contends that the legal rate is the rate found in 28 U.S.C. § 1961 which, since that provision was amended in 1982, is determined by the interest paid on 52 week Treasury Bills settled prior to judgment computed daily and compounded annually. 28 U.S.C.A. § 1961(a), (b) (West Supp.1985).[2] *In Re Connecticut Aerosols, Inc.,* 31 B.R. 883, 886–87 (Bankr.Conn.1983), *aff'd,* 42 B.R. 706, 711 (D.C.Conn.1984) (interest rate applied to priority tax claim under Chapter 11 plan was set by 28 U.S.C. 1961(a)); *In Re Fisher,* 29 B.R. 542, 549–50 (Bankr.Kan. 1983) (discount rate applicable in a Chapter 13 plan would be based on the equivalent coupon yield rate of 52 week Treasury Bills). Based on the stipulated documents and computations supplied by the parties, application of the average annual interest rate for 52 week United States Treasury Bills for the years 1981–85 to the $926,-210.95 trust fund, would produce $563,-695.35 in interest due Firestone as of December 31, 1985.

■ The legal rate of interest specified in the Bankruptcy Code under § 726(a)(5), however, only applies to claims paid under § 726(a)(1), (2), (3) and (4). Because the

trust funds are not due as a claim under these subsections, the Court should not apply that legal rate of interest.

**(c)** *Alternative rates argued by the parties.*

Alternatively, Firestone argues that interest should be paid at an equitable rate which is the actual market rate of interest earned on the trust funds since June 15, 1981. Goldblatt has not submitted any rate of interest earned on the trust funds from June 15, 1981 until December 6, 1983, it appearing that the moneys were used in operations of the estate during that period. However, Goldblatt has provided the actual Certificate of Deposit rates earned by it on estate funds between December 6, 1983, and November 29, 1985, and the Business Money Account rates earned by it between December 6, 1983, and July 23, 1985. Thus, for the period between December 6, 1983, and November 29, 1985, Firestone computed the arithmetic average of the rates of interest earned by Goldblatt's on its estate funds in 1984 and 1985. Firestone suggests that this average should be compounded at least quarterly because Goldblatt reinvested its certificate of deposit funds every sixty days.

For the period between June 15, 1981 and December 6, 1983, during which it appears that Goldblatt employed in estate operations but did not invest the commingled funds and estate funds, Firestone has suggested that an equitable rate to approximate Goldblatt's putative earnings would be the market rates of interest during that period. Firestone prepared a stipulated

---

**2.** Section 1961 provides:
   (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefore may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the

average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
   (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.
28 U.S.C.A. § 1961(a), (b) (West Supp.1985).

summary of the relevant market rates.[3] Firestone further applied the annualized rate of interest earned on 3-month Treasury Bills, and compounded it quarterly. Adding the total market rate of interest earned in 1981 and 1982 to the arithmetic average of estate funds for 1983–1985 would result in an interest sum of $485,222.12 earned from June 15, 1981 through December 31, 1985.

■ Goldblatt strenuously denies that any interest should be charged on the trust funds, but has provided the court with a method of calculating interest if necessary. Goldblatt recognizes that prior to the 1982 amendment of 28 U.S.C. § 1961, the legal rate on federal judgments was the rate specified by the state statute where the federal court sat. After the 1982 amendment of § 1961, the legal rate of interest on federal judgments became the rate earned on 52 week Treasury Bills. Goldblatt argues that the amended version of § 1961 does not apply to a judgment rendered in a bankruptcy court in part because § 1961(c)(4) provides: "[t]his section shall not be construed to affect the interest on any judgment of any court not specified in this section", and § 1961 only mentions the District Court. Thus, Goldblatt argues that the 52 week Treasury Bill rate is not to be applied to judgments in bankruptcy cases, because the bankruptcy courts have always applied the legal rate of judgment interest specified by the state in which they sat. *See e.g. In Re Foster*, 38 B.R. 639, 641 n. 2 (Bankr.M.D.Tenn.1984); *In Re Matter of Wholesale Furniture Mart, Inc.*, 24 B.R. 240 (Bankr.W.D.Mo.1982); *In Re National Trade Corp.*, 22 B.R. 877 (Bankr.N.

D.Ill.1982).[4] Goldblatt urges the application of the state law judgment rate. In Illinois, that rate presently is nine percent per year. *Ill.Ann.Stat.* ch. 110, § 2–1303 (Smith-Hurd Supp.1985).[5] Applying the nine percent rate to the $926,210.95 trust funds would result in simple interest totalling $378,198.60 from June 15, 1981 through December 31, 1985. Goldblatt further argues that interest should not be compounded because this is not a case involving fraud, willful misconduct, or gross delinquency. *See* G. Bogert and G. Bogert, The Law of Trust and Trustees, § 863 at 35 (2d ed.1962).

The issue of whether the legal rate of interest applied to a bankruptcy court judgment is the rate earned on 52 week Treasury Bills or the legal judgment rate in Illinois is not now before the Court. That question arises after judgment has already been entered, and relates to the rate that will apply to the final judgment entered herein. The issue now before this Court is rather the amount of interest that should be paid on Firestone's trust funds for the period post-petition and pre-judgment.

Firestone suggests that the rate of interest earned on money investments by the Goldblatt estate for the years 1983–1985 should be treated as the amount of interest earned by the trust fund for that period. Neither the interest rates provided by Goldblatt for the years 1983–1985, nor the annualized market rates for the years 1981–1983, are directly traceable to the Firestone trust property, and thus neither provide a precise accounting of the interest actually earned on Firestone's money.

---

**3.** Firestone provided the rates for 52 week United States Treasury Bills, 3-Month United States Treasury Bills, Moody's Corporate Aaa Bonds and the Prime Rate charged by banks.

**4.** Goldblatt's arguments are unpersuasive, however, because the court in *Foster* specifically reserved ruling on the issue of whether § 1961 applies to bankruptcy court judgments. *Id.* 38 B.R. at 641 n. 2. In *Furniture Mart* the court did not specify the legal rate it was applying. *Id.* 24 B.R. at 244 n. 9, and *National Trade Corp.* was decided before the 1982 amendment to 28 U.S.C. § 1961. *Id.* 22 B.R. at 879. In addition,

the bankruptcy courts of a particular judicial district are units of the district court. 28 U.S.C. § 151 (Supp.1985). Therefore, 28 U.S.C. § 1961 (Supp.1985), applies to judgments rendered in the bankruptcy court.

**5.** Section 2–1303 provides:
Interest on judgments. Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of judgment until satisfied . . .
Ill.Ann.Stat. ch. 110, ¶ 2–1303 (Smith-Hurd Supp.1985).

(d) *Interest rate to be imposed for the 1981–1983 period.*

Where the trustee or debtor has commingled the funds with his own business, and does not submit evidence as to how much interest he has received, a court will often impose the legal pre-judgment rate of interest. G. Bogert, § 863 at 30; A. Scott, § 207.1. In Illinois, in the absence of a contrary agreement by the parties, the amount of pre-judgment interest is five percent per year. Ill.Ann.Stat. ch. 17, ¶ 6402 (Smith-Hurd 1981).[6]

The five percent interest rate also applies to prejudgment interest when litigating a constructive trust dispute. *LaBarbera v. LaBarbera,* 116 Ill.App.3d 959, 72 Ill.Dec. 431, 452 N.E.2d 684 (1st Dist.1983).

In *LaBarbera,* the court allowed pre-judgment interest on funds because there had been a breach of trust. The court noted that in Illinois, there are only limited instances when interest is imposed by law despite lack of agreement by parties to pay interest. *LaBarbera,* 116 Ill.App.3d at 967–68, 72 Ill.Dec. at 437, 452 N.E.2d at 690 (citing Ill.Rev.Stat. ch. 17, ¶ 6402 (1981)). However, "where a fiduciary or confidential relationship exists and is violated, interest upon the recovery may be allowed irrespective of statute." *LaBarbera,* 116 Ill.App.3d at 968, 72 Ill.Dec. at 437, 452 N.E.2d at 690 (quoting *Smith v. Dravo Corp.,* 208 F.2d 388, 391 (7th Cir.1953)). Thus Illinois courts will allow interest on recovery of funds held in constructive trust and the applicable interest rate is the five percent rate specified by Illinois law. *LaBarbera,* 116 Ill.App.3d at 968, 72 Ill.Dec. at 437, 452 N.E.2d at 690. *See also, Burtell v. First Charter Service Corporation,* 76 Ill.2d 427, 31 Ill.Dec. 178, 394 N.E.2d 380, 385 (1979) (court imposed constructive trust on funds, and in the absence of agreement between the parties concerning an interest rate, applied the Illinois pre-judgment statutory rate of five percent). Here, of course, a trust was found by the District Court to be implied from the contracted relationship of the parties, not imposed constructively by the court. However, no authority or basis for imposing a different interest rate has been shown merely because the trust here is implied rather than constructive. Moreover, the Illinois pre-judgment statute (see footnote 6 supra) applies by its terms to the moneys due Firestone under its written contract, and because of the long and vexatious delay in payment apparent here.

Existence of a good faith dispute does not by itself preclude recovery of prejudgment interest. *Ervin v. Sears, Roebuck and Co.,* 127 Ill.App.3d 982, 82 Ill.Dec. 709, 469 N.E.2d 243 (5th Dist.1984). In the situation before this Court, Goldblatt, as trustee of the trust funds, litigated what was argueably a good faith dispute with Firestone. That dispute centered around whether Goldblatt and Firestone had a debtor/creditor relationship, or a trust relationship. The pre-judgment interest rate to be applied while parties are litigating their claim has been addressed by the Second Restatement of Trusts:

> If, however, his [the trustee's] failure to pay was due to a reasonable doubt as to his duty to make payment, he is not liable, during the period while the question of his duty is being litigated, for any interest *except such as he has actually received or should have received* during that period. In such a case the trustee should ordinarily not invest the money but should deposit it in a bank in order that he may be in a position to pay it over immediately if the court should so decree.

---

**6.** Section 6402 states:

Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance [;] on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. Ill.Ann.Stat. ch. 17, ¶ 6402 (Smith-Hurd 1981).

Second Restatement of the Law of Trusts, § 207 at 470 (A.L.I.1959) (emphasis added). *See also* A. Scott, § 207.2 at 1682.

■ Compound interest is allowed if it will more accurately make the parties whole, or when (as here) the defaulting trustee has used the trust funds in his own business and the actual profits cannot be traced. G. Bogert, § 863 at 31, 35–36. *Lehman v. Rothbarth*, 159 Ill. 270, 42 N.E. 777 (1896). *See also* A. Scott, § 207.2 at 1683; Restatement, § 207(2)(b) at 469. A strong presumption is raised that the trustee used the trust funds in his business if he does not submit an accounting or show the disposition of the trust money. G. Bogert, § 863 at 35–36. Goldblatt did not provide an accounting of the trust moneys for the period from 1981–1985. Indeed, Goldblatt here used the trust funds for its own purposes during the initial portion of the post-petition period, and only then invested its moneys. Because Goldblatt used the trust funds in its own post-filing operations, the profits for that period of time cannot be traced. Therefore the charging of compound interest for that period is appropriate. Goldblatt should have segregated and deposited the funds prudently at interest during the entire period of this pending dispute.

Thus, Firestone should receive a rate of return on the trust funds for the 1981–83 period of 5%, which is the statutory prejudgment rate in Illinois. Ill.Ann.Stat. ch. 17 ¶ 6402 (Smith-Hurd 1981). *See also* Second Restatement of the Law of Trusts, § 207, at 470. Even though Goldblatt did not actually receive 5% interest or any interest on moneys not invested but used in its post filing affairs, the Court will impose the statutory prejudgment rate, compounded annually, because the Debtor-in-Possession commingled the trust funds with its other moneys without investing those funds.

The $926,222.12 that Goldblatt held in implied trust for Firestone is therefore imputed to have earned five percent interest compounded annually from June 15, 1981 until the moneys began to be invested along with estate moneys on December 6, 1983.

(e) *Interest to be imposed for the period December 6, 1983 to judgment.*

■ For the period after December 6, 1983, until judgment is entered, Goldblatt must pay the interest it actually earned on the invested moneys. From the evidence presented by stipulation, it appears that the invested trust funds were commingled with other invested funds, so the exact earnings on the trust funds are not susceptible of precise computation. Therefore the best and fairest approximation of those earnings will be computed by using the Firestone suggestion of an arithrimetic average of the rates of interest actually enjoyed by Goldblatt on its investments during that period, compounded quarterly to match its stipulated reinvestment pattern. The parties will endeavor to stipulate to that computation through the date of judgment entry on June 9, 1986. If not so stipulated, Firestone will prepare a detailed computation and prepare to support same with testimony by the person preparing it. The same will be presented in open Court at 11:30 A.M. that day, along with draft proposed final judgment order thereon. This case will be called that day to receive same and thereupon enter final judgment order, after hearing testimony as to the computation if that be necessary.

3. *Additional related matters.*

Goldblatt will also report by written filing within 7 days hereof the exact present location and account number(s), manner of investment and exact balances in all accounts containing the Firestone money including interest to that date, whether or not those funds are segregated from assets of the estate. Firestone will within 7 days hereof brief its position as to whether injunctive order should issue in conformity with its prayer for relief, and Goldblatt will file an answer thereto within 14 days hereof. Each party will on the same schedule brief the question of this Court's jurisdiction to enter final judgment herein, in the

light of stipulation they entered into for entry of such final judgment by this Court. Firestone will tender a proposed final injunctive order in accord with such prayer and brief, as part of the final judgment order to be tendered by it as aforesaid. That injunction will of course be drafted in accord with Rule 65, F.R.Civ.P. and provide for the immediate segregation and investment pending the coming appeal herein of the amount found due by judgment order. Firestone will two days before said hearing date submit to the court courtesy copies of all filings by both sides and proposed judgment order required hereinabove.

The Court anticipates that questions of stay pending appeal, and related questions as to any need for supersedeas bond, will shortly be before the Court. When those matters are presented, the parties will be prepared to argue the necessity for supersedeas bond in the light of the segregated and invested fund to be enjoined until appeals are completed.

### Conclusion

Debtor has had the use and investment for almost five years of close to $1 million of Firestone's money which it held in implied trust. Neither Goldblatt nor its creditors have or ever had any right to that money, or any right to deny Firestone proper interest thereon. This long standing injustice stemmed from debtor's unlawful commingling of Firestone moneys. It's high time that it be brought to an end.

IT IS SO ORDERED.